**MANCHESTER INSURANCE & INDEMNITY COMPANY, Appellant,**

v.

**Anthony GRUNDY et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 19, 1975.

Rehearing Denied Feb. 6, 1976.

James Levin, Levin & Yussman, Louisville, for appellant.

Joe G. Leibson, Louisville, for appellees.

STEPHENSON, Justice.

A Jefferson Circuit Court jury returned a verdict against Manchester Insurance & Indemnity Company based on "bad faith" in failing to settle a claim against its insured. Manchester appeals; we reverse.

Manchester issued an automobile insurance policy to Carl Weaver. The policy provided bodily injury coverage limited to $10,000 for one person. The accident which brought about this litigation occurred when an automobile operated by Weaver on a street in the city of Louisville struck the rear of an automobile being operated by a Richard Humphrey. The Humphrey automobile struck Grundy, a pedestrian, who was standing on a sidewalk. Grundy filed

suit against Weaver, who filed a third-party complaint against Humphrey. Weaver stated that the Humphrey car gave no signal by lights or otherwise; that the automobile was stopping or turning; and that the impact when he struck the Humphrey car was not of sufficient force to propel the Humphrey car against Grundy.

The injury sustained by Grundy consisted of multiple-compound fractures of the left leg. Some seven months later, Grundy resumed his full-work activities with no permanent disability or impairment although still suffering from some pain and swelling in the leg. One month later, a surgical procedure for the removal of a Lotte's nail, which was used in reduction of the fracture, was successfully performed necessitating a brief hospital stay. The total medical expense was $1,286.45 with lost earnings of $1,907.20.

The trial court directed a verdict against Weaver, submitting to the jury the issue of whether Humphrey contributed to the accident by his negligence. The jury returned a verdict of $20,000 against Weaver. Later Grundy brought suit against Manchester to recover the excess alleging that Manchester was guilty of "bad faith" in failing to settle Grundy's claim, pleading an assignment from Weaver of Weaver's rights against Manchester. *Grundy v. Manchester Insurance & Indemnity Co.*, Ky., 425 S.W.2d 735 (1968), upheld the validity of the assignment from Weaver to Grundy with directions to hear evidence and try on the merits.

From the evidence introduced at the trial on the issue of "bad faith" in refusing to settle within the policy limits, it appears that Manchester sent Weaver a standard letter advising that Grundy's claim exceeded the limits of the policy and advising that he could employ counsel to defend the excess over the policy limits. Weaver consulted an attorney but did not employ him to defend. In preparation for trial of the damage suit, Weaver and a representative of Manchester visited the scene of the accident; and the record does not disclose that

Weaver ever expressed any dissatisfaction with the manner in which the case was handled by Manchester. There is a conflict in the evidence as to whether Weaver was kept advised of the negotiations for settlement. Weaver did not make a demand that Manchester settle the claim within policy limits. As to negotiations for a settlement of the claim, some months after the accident suit was filed against Weaver, Grundy's attorney forwarded a curious letter to Manchester's representative demanding that Manchester settle for the policy limits and reciting that "refusal upon the part of your company to settle within policy limits would be tantamount to an act of bad faith against my client as well as Weaver, the insured" and that if a judgment was obtained in excess of the policy limits, "will make every effort to collect the full judgment against the insurance company based upon their bad faith in not accepting this settlement proposal."

Manchester later made an offer of $5,000 to settle, but it was refused with a statement that only the policy limits would settle the case. On the morning of the second day of the trial after the testimony was completed, the jury instructed, and before the closing argument, Manchester offered to settle the case for $7,500. This offer was refused with a counter offer of settlement for $9,500 which was not accepted.

The evidence shows that while the jury was deliberating there was a conversation between Grundy's lawyers and Manchester's lawyer and representative to the effect that Manchester declined to offer more than $7,500 in settlement since that was all the case was worth and because of the state of Kentucky case law on the subject Grundy could never collect more from Manchester. Grundy presented two witnesses. One witness, a claims representative for another insurance company, testified that he would value the injuries for settlement purposes at approximately $25,000 because of the extent of the injuries, the absolute liability of Weaver, and the circumstances of the

accident. The other witness for Grundy, a lawyer for a Louisville utility, testified that for settlement purposes he would value the case at $18,500 to $25,000 and would have settled because of the directed verdict.

Manchester introduced a witness, a lawyer for a public utility and another insurance company, who testified that he would value the case for settlement purposes from $8,000 to $12,000 and further testified that in his opinion it would not be reasonably certain that a jury in Louisville would return a verdict in excess of $10,000.

The jury found a verdict for Grundy under the following instruction given by the trial court:

"(1) If the jury believe from the evidence that the conduct of Manchester Insurance and Indemnity Co., referred to hereafter as Manchester, in negotiating about and failing to settle the claim of Anthony Grundy in March of 1965 for the amount of the policy limit *was of such arbitrary and reprehensible nature as to constitute bad faith, meaning conscious doing of a wrong or breaching of a known duty for some motive of interest or ill will,* and if the jury shall further believe from the evidence that the facts and circumstances of the accident known to Manchester, or which should have been known by Manchester in the exercise of due diligence on its part, were such as to cause the defendant, Manchester, reasonably to conclude and believe that a verdict against Carl Weaver on a trial of the issue of liability was probable and that a verdict and judgment would probably be returned against Weaver exceeding the policy limit of $10,000.00, you will find for plaintiffs against the defendant, Manchester, but, unless you so believe or if you believe as set out in Instruction No. 2, you will find for the defendant." (Emphasis ours)

This appeal brings us to a consideration of the proper application of a test to determine "bad faith" on the part of an insurance company in failing to settle a claim. The perplexity of the problem and the con-fusion that abounds in this area among the several jurisdictions are illustrated by 44 Am.Jur.2d, Insurance, § 1530:

"Liability or indemnity insurance policies ordinarily reserve to the insurer the decision whether an offer to compromise a claim against the insured should be accepted. It is apparent, therefore, that a conflict in the interests of the insurer and the insured may arise where there is an action or claim against the insured for an amount in excess of the policy coverage and an offer to compromise this claim for the policy limit or a figure slightly below such limit. While a number of the earlier cases apparently support the rule that a liability insurer is under no duty to consider the insured's interest in accepting or rejecting a compromise offer, and, on the other hand, it has occasionally been contended that such an insurer has an absolute duty to accept any offer to settle for an amount within the policy coverage, and rejects such an offer at its own risk, the vast majority of the courts have held, and it is probably the accepted rule in most if not all jurisdictions at this time, that the insurer is bound to give some consideration to the insured's interest in such a situation. But though the courts are now thus agreed, there is a pronounced split in the decisions upon the question whether the insurer's obligation is only to act in 'good faith' to the insured in considering such an offer, or whether it is required to exercise 'due care' and is liable for a negligent rejection of the compromise. In the great majority of the cases passing upon the question, the courts have held that a liability insurer, having assumed control of the right of settlement of claims against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise 'good faith' in considering offers to compromise the claim for an amount within the policy limits. However, a number of courts considering the liability of an insurer for rejecting an offer to compro-

mise a claim against its insured for an amount within the limits of the policy coverage have rejected the rule that the insurer's duty is limited to the exercise of good faith toward the insured, and have held that there might be liability for negligence in rejecting a reasonable compromise offer.

"No single satisfactory test has been formulated as to just what degree of consideration for the insured's interest is entailed by the requirement of 'good faith' as adopted in the majority of jurisdictions. Some of the courts have indicated that in the absence of actual fraud or misrepresentation the insurer is entitled to regard its own interests as paramount; others have said that the insured's interest must be given equal consideration, while at least one court has said that in the event of a conflict of interests the insured's interest must be given priority. Similarly, under the 'negligence test,' while the courts which have expressly adopted this rule are in substantial agreement that the insurer's 'due care' in the circumstances is to be measured by that of a reasonably prudent man in the conduct of his own affairs, questions have arisen whether the test should be the conduct of this hypothetical man in an insured or an uninsured status. Also, in a large number of the more recent cases the two tests of 'good faith' and 'negligence' have tended to coalesce with many of the courts which have in terms rejected the 'negligence' test agreeing, nonetheless, that negligence is a relevant consideration in determining whether or not an insurer exercised the requisite good faith."

■ Kentucky has adhered to the rule adopted by the majority of jurisdictions in requiring a finding of bad faith to create liability for the excess of the policy limits, rejecting the concept of negligence. "Although some jurisdictions have extended liability in cases of this type so as to permit recovery for *negligent* failure to settle within the policy limits, we are not per-

suaded as to the soundness of such a doctrine. In our view there must be a showing of 'bad faith.'" *Harvin v. United States Fidelity & Guaranty Co.,* Ky., 428 S.W.2d 213, 215 (1968).

*American Surety Co. of N. Y. v. J. F. Schneider & Son,* Ky., 307 S.W.2d 192, 195 (1957), states the rule followed in Kentucky:

"There is no liability on the insurer for failure to settle claims against the insured in excess of the policy limit in the absence of bad faith. It is the duty of the insurer to exercise the utmost good faith. Mere errors of judgment are not sufficient to constitute bad faith. Acting in bad faith or the failure to exercise good faith is sufficient to create liability on the part of the insurer for the excess of the policy limit."

At the time of the trial on the issue of liability, there had never been a recovery by the insured or his assignee upheld by this court. Before the trial on the issue of bad faith, this court delivered an opinion in *State Farm Mutual Automobile Ins. Co. v. Marcum,* Ky., 420 S.W.2d 113 (1967), affirming a recovery for bad faith in failing to settle. The trial court here instructed the jury according to Marcum, and the pros-and-cons of Marcum are argued at length in counsels' briefs. For this reason, mindful of the uncertainties and lack of a satisfactory test to determine good or bad faith in this jurisdiction and others, we will address ourselves first to an evaluation of Marcum.

That portion of the opinion in Marcum which outlines the procedure by which the injured party sought to obtain the excess over the policy limits should be clarified. There Marcum, after a judgment was entered in excess of the policy limits and an execution was returned "no property found," filed an amended and supplemental complaint against State Farm and the insured. This pleading was based on KRS 426.381, the "garnishment statute," which provides as recited in the opinion that after the return of an execution by the proper

officer, showing that no property was found to satisfy the execution, the execution plaintiff "may by an amended and supplemental petition filed in the action have the same redocketed and join with the execution defendant or defendants any person believed to be indebted to him or them, or to hold money or other property in which he or they have an interest, or to hold evidences or securities for the same." The statute also authorizes that the property be "subjected to the satisfaction of the judgment."

The supplemental pleading set out that State Farm had not acted in good faith; that it knew any judgment rendered would be far in excess of policy coverage; that the insurance company was indebted to the policy holder; and that Marcum was subrogated, as the real party in interest, to the rights of the insured to require the insurance company to make full payment of the judgment.

The insured then filed an answer which admitted the allegations of Marcum's pleading and demanded that judgment be granted against State Farm. The action then proceeded to trial over the objections of State Farm, resulting in a jury verdict for Marcum.

The opinion recites "[w]hether the amended complaint stated a cause of action on behalf of Marcum against State Farm, we need not decide because the action was pending when the insured asserted a valid cause of action based on 'bad faith'." .

We should have decided then and do now hold that the proceedings outlined in the Marcum opinion are not permissible.

The rule of law creating liability on the part of the insurer for acting in bad faith has its roots in the terms of the insurance contract. " * * * [W]hile the specific language will not be found in the contract it is there by operation of law." *Terrell v. Western Casualty & Surety Company,* Ky., 427 S.W.2d 825, 827 (1968). "There is an implied covenant in the insurance policy * * * of good faith and fair dealing.

This implied covenant was a contractual duty to exercise good faith to protect the insured from the risk of having a judgment rendered against him greatly in excess of the limits of the policy. Under the terms of the policy, the insurer alone had the right and power to settle. 3 Williston Contracts, § 670, 1926 (rev. ed. 1936)." *Grundy,* supra, at page 737.

■ Grundy's lawyer, as evinced by the first offer of settlement quoted above, is under the misapprehension that somehow the claimant is the beneficiary of the rule as to "bad faith." This is not so. There is no privity of contract between the insurer and the claimant, so the insurer is never guilty of "bad faith" to the claimant. The claimant can look only to the insured for satisfaction of the judgment unless the insured makes an assignment to the claimant as approved in *Terrell,* supra, and as was done here. *Grundy,* supra. On the part of the insured, he may proceed directly against the insurer if he so desires.

'Aside from the procedure outlined in Marcum, the opinion recites factors indicating "bad faith" to be probability of recovery; there was a directed verdict against Bell, the insured, and the extent of injuries which the opinion recites makes it obvious that the recovery would be *far in excess* of the policy limits and the negotiations with respect to settlement.

Marcum illustrates the problem, not answered in any jurisdiction, of formulating a satisfactory standard for submitting the issue of "bad faith" to a jury. This problem is portrayed by the lengthy quote from 44 Am.Jur.2d, supra.

California is apparently preparing to finesse the problem of formulating a satisfactory test.

In *Crisci v. Security Insurance Co. of New Haven, Conn.,* 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967), where the court held the insurer liable for the excess over the policy limits, it was argued that whenever the insurer receives an offer to

settle within the policy limits and rejects it, the insurer should be liable in every case for the amount of any final judgment whether or not within the policy limits. In the course of the discussion of this argument, the court stated:

"The proposed rule is a simple one to apply and avoids the burden of a determination whether a settlement offer within the policy limits was reasonable. The proposed rule would also eliminate the danger that an insurer, faced with a settlement offer at or near the policy limits, will reject it and gamble with the insured's money to further its own interests. * * *.

"Finally, and most importantly, there is more than a small amount of elementary justice in a rule that would require that, in this situation where the insurer's and insured's interest necessarily conflict, the insurer, which may reap the benefits of its determination not to settle, should also suffer the detriments of its decision. * * *.

"We need not, however, here determine whether there might be some countervailing considerations precluding adoption of the proposed rule * * *."

This indicates a disposition to impose strict liability.

University of Florida Law Review, 23:201, Fall '70, "Strict Liability for Insurance Companies in Excess Judgment Suits," states at page 205 that Florida may be moving toward a strict liability in this situation:

"A rule of strict liability eliminates the danger that an insurer, who is offered a settlement at or near the policy limits, will refuse it, in effect, gambling with the policyholder's money to further its own interests. Adoption of this doctrine will also end the confusion over the bad faith and negligence standards and thus eliminate a troublesome, or even impossible, question for the jury."

The advantage of strict liability is in its simplicity. The objection in our view is that it reforms the insurance contract. Both Crisci and the University of Florida Law Review article reflect the frustration resulting from a search for a satisfactory test to fairly submit the issue to a jury. The key to the frustration is pointed out in the article in that the issues of bad faith and negligence are "*troublesome, or even impossible, question*[s] *for the jury.*"

Probability of recovery and that the recovery would be in excess of the policy limits are the factors of primary importance set out in *Marcum*. They must be evaluated together. As the probability of recovery moves toward a certainty, so does the burden on the insurer to settle, considered together with the extent of the injuries, translated into an evaluation of the probable amount of a jury verdict in excess of the policy limits. To the extent this probable amount increases beyond the policy limits, so does the burden on the insurer to settle.

The negotiations with respect to settlement are a factor to be considered. American Surety Co. of N.Y., supra, at page 196 states:

"There is no merit to appellee's argument that the insurer is compelled to offer or make a settlement of its full liability. The inducement to an insurer to settle is that it can do so for less than the policy limit. There is no such inducement if the insurer is compelled to offer the full policy amount in settlement. It may as well try the case in the hope for a jury verdict for less than its full liability."

This language, we believe, led the plaintiff's lawyer in *Harrod v. Meridian Mutual Insurance Co.*, Ky., 389 S.W.2d 74 (1964), to make an offer of settlement for $9,999 where the policy limits were $10,000. This, in our view, is hair-splitting, and this proposition in American Surety Co. of N.Y. is overruled.

It is, of course, a factor to be taken into consideration if the plaintiff offers to settle for less than the policy limits to the extent that the offer is less. This factor should be evaluated together with the other factors set out herein. That is not to say that the insurer is relieved of "bad faith" if only the policy limits are offered as a basis of settlement. An offer to settle for the policy limits must also be evaluated in the circumstances of probability of recovery and probability of a jury verdict to the extent that it would exceed policy limits. We observe that last-minute offers of settlement, as in *Harvin,* supra, which do not give the insurer adequate opportunity to evaluate are entitled to less consideration.

Another factor we believe should be considered is whether the insured made a demand for settlement on the insurer. This factor is a subject of the dissent in *Marcum.* We are of the opinion that this demand, or lack of it, is not controlling but should be given the weight that is warranted in the circumstances of a given case.

■ We realize, of course, that we cannot visualize all the circumstances arising in future situations, so that there may be other factors peculiar to a set of facts that should also be weighed and evaluated together with those enumerated above. It appears to us that these factors represent, if properly weighed and evaluated together in the circumstances of a particular case, a fair test of good or bad faith both to the insurer and the insured.

The difficulty in applying the test rests in the ability of the fact-finder to apply it. As suggested in the University of Florida Law Review article, this presents a troublesome or even impossible question for the jury. Ordinarily a jury is unsurpassed as a fact-finding body for disputed facts. However, if we assign to the jury tasks which it cannot perform intelligently, we are destroying the efficacy of the propounded test.

■ This is pointed out in an article entitled "Duty of Liability Insurer to Compro-mise Litigation," 26 Ky.L.J. 100, Jan. 1938. The article discusses the tests of "negligence" and "bad faith" and goes on to say "[h]ere we have two tests enunciated by the courts. Each has been bitterly attacked by writers and by judges. There is little distinction to be found in some decisions which apparently regard both tests to have the same essential elements. The one real point of vulnerability is existent under both—that is consideration of the question as a jury issue. No jury whatsoever is competent to consider such an issue whenever attorneys, experts in the fields of personal injury and insurance law, might well differ upon the questions of due care by or good faith of the insurer in such a situation. A group of laymen, casually assembled, is absolutely incompetent to apply either test accurately * * *." We are of the opinion that a jury is just not equipped to evaluate the probable chances of recovery in a given case; nor is it equipped to properly weigh and evaluate this factor together with the other factors enumerated above. The issue of "bad faith" should be decided by the trial court. Only the trial court has the training and experience to properly apply these factors to a set of facts. We thus overrule Marcum, American Surety Co. of N. Y. and Harrod, supra, to the extent that they approve submitting the issue to the jury, and other cases that leave this question to the jury.

■ Looking toward a workable definition of "bad faith," we find in the various jurisdictions, including this one, a wide variety of definitions. In the trial of this case, the test used in the instruction taken from Marcum was whether the failure to settle "was of such arbitrary and reprehensible nature as to constitute bad faith, meaning conscious doing of a wrong or breaching of a known duty for some motive of interest or ill will." We are of the opinion that a definition such as this is more rhetorical than practical in application. We are of the opinion that taking into consideration all the factors enumerated above and in weigh-

ing and evaluating such factors according to the circumstances of a given case, the test should be: Did the insurer's failure to settle expose the insured to an unreasonable risk of having a judgment rendered against him in excess of the policy limits? If the question is answered "yes" by the trial court after weighing and evaluating the various factors, then the insurer is guilty of "bad faith."

We note that in the trial of this case the two expert witnesses introduced by Grundy testified as to what amount they would consider the case worth for settlement purposes. This is irrelevant. The test of this factor is what in the opinion of the expert a jury in the same community probably would have awarded at the time of the trial on liability. In weighing this factor, the trial court is better able to comprehend and evaluate the testimony of experts should they be presented.

Here also there is the fact that although a verdict was directed against Weaver, the issue of Humphrey's negligence in contributing to the accident was submitted to the jury. The record sheds little light on the strength of this defense. There is no question here of the strength of Grundy's cause of action. Either Weaver or Humphrey or both would be liable for damages. We leave a resolution of this question for the trial court on retrial.

We do not by this opinion fault the trial court in its handling of this case. The trial judge did the best he could with the tools at hand.

The judgment is reversed with directions to grant a new trial consistent with this opinion.

REED, C. J., and JONES, LUKOWSKY, PALMORE and STERNBERG, JJ., concur.

CLAYTON, J., dissents.

CLAYTON, Justice (dissenting).

I respectfully dissent from the majority opinion. Simply stated, I cannot agree that a trial judge, even though trained in legal principles, is better qualified than a jury of twelve properly instructed individuals in (1) resolving issues of fact, (2) gauging the actions of an insurance company, and (3) answering the ultimate question of whether bad faith is present. Admittedly, many of the factual situations would appear to be interwoven beyond separation, but it is the well-settled practice in a majority of the various jurisdictions to submit a wide range of issues of varying complexity to the jury for resolution. For cases illustrating this proposition see *Atlantic Mut. Ins. Co. v. Cooney,* 303 F.2d 253 (9th Cir. 1962); *Tennessee Farmers Mut. Ins. Co. v. Wood,* 277 F.2d 21 (6th Cir. 1960); *Hamilton v. State Farm Ins. Co.,* 83 Wash.2d 787, 523 P.2d 193 (1974).

Further, I cannot accept that part of the majority opinion which overrules the proceedings in *State Farm Mutual Automobile Ins. Co. v. Marcum,* Ky., 420 S.W.2d 113 (1967); *American Surety Co. of N. Y. v. J. F. Schneider & Son,* Ky., 307 S.W.2d 192 (1957); and *Harrod v. Meridian Mutual Insurance Co.,* Ky., 389 S.W.2d 74 (1964). Such an unsettling of existing law is perplexing to the trial bar and judge. See *Campbell v. Government Employees' Ins. Co.,* Fla., 306 So.2d 525 (1974). The majority opinion should, at least, be made prospective.

Today juries are sufficiently sophisticated in the field of insurance to adequately *find from the facts* if an insurance company has acted in bad faith. In *Highway Insurance Underwriters v. Lufkin-Beaumont Motor Coaches, Inc.* (Texas Civ.App.) 215 S.W.2d 904 (1948), the court said, at page 928:

"Whether Insurer breached the applicable standard of conduct is not easy to determine; determination of such an issue requires an exceedingly precise evaluation of evidence."

Recognizing the difficulties attendant in the task of sifting through the evidence, not to mention answering the questions surrounding "due care," "good faith," and

"conflicts of interest" on the part of the insurer, the court in *Highway Insurance Underwriters,* supra, went on to say, at page 928:

"Under the circumstances, then, we shall be justified in requiring of Insurer a strict compliance with the burden of proof. However, we can make no greater demand of Insured for, as we have stated, *the fact that room for a difference of opinion exists eventually makes the question one for the jury, not for this court."* (emphasis added)

I could more easily accept the majority opinion if the litigant were given an option between the judge and the jury.