NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0833n.06
Filed: October 7, 2005

No. 04-6246

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

AUGUSTINE TORRES,

      **Plaintiff-Appellant,**

v.

AMERICAN EMPLOYERS INSURANCE CO.,
et al.,

      **Defendants-Appellees.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

                                            /

BEFORE:    CLAY and GIBBONS, Circuit Judges, and STEEH, District Judge.[*]

    **CLAY, Circuit Judge.** Plaintiff, Augustine Torres, appeals the district court's dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of Plaintiff's state law claims against Defendant insurance companies. Plaintiff's claims allege illegal and tortious conduct under Kentucky state law during the mediation of an underlying tort claim against the owners, builders, and sellers of a pool in which Plaintiff was injured. Plaintiff's suit alleges causes of action for 1) unfair claim settlement practices under the Kentucky Unfair Claims Settlement Practices Act

---

      [*]Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

("UCSPA"), 2) bad faith, 3) fraud, 4) outrageous conduct, and 5) intentional or negligent infliction of emotional distress. For the reasons set forth below, this Court AFFIRMS the district court's dismissal of all claims for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

### I. Substantive Facts

This case has its origins in a separate tort action brought by Plaintiff after he sustained injuries, including quadriplegia, when diving into a private swimming pool. Plaintiff brought an action in Kentucky's Clark County Circuit Court on August 4, 2000, charging negligence by pool owners Allen and Pamela Willoughby. (Compl. ¶¶ 1-8, *Torres v. Willoughby et al.*, No. 00-CI-00362 (Ky. Cir. Ct. Clark County filed Aug. 4, 2000)).

Plaintiff subsequently amended his complaint in the underlying tort action to add defendants Tri-Star Pool Construction, the builder and installer of the pool; SPC Pool Corporation, South Central Pool Supply, Inc., and SCP Distributors, LLC, (collectively, "SCP"), the manufacturers and sellers of the component parts of the pool; and S. R. Smith, LLC, the manufacturer and seller of the pool slide. (First Amended Compl.¶¶ 2-13, *Torres*, No. 00-CI-00362.) In a second amended complaint, Plaintiff added as defendants Cookson Plastic Molding Corporation and Pacific Industries, alleging that "either" of them had manufactured the vinyl liner of the pool and other component parts of the pool, and Kentucky Pool & Supply, Inc. and CENTE' Industries, Inc., the

sellers of the pool slide and other component parts of the pool. (Second Amended Compl.¶¶ 2-10, *Torres*, No. 00-CI-00362.)

Defendants in the instant case are all insurance companies with whom the underlying tort defendants had policies or coverage. Defendant American Employers' Insurance Company ("AEIC") insured Cookson Plastic and Pacific Industries for $1,000,000 per occurrence for personal injury. (Def. Br. at 5.) Defendant One Beacon Insurance Company ("One Beacon") is the parent company of AEIC. (*Id*.) Defendant Fireman's Fund Insurance Companies ("Fireman's Fund") insured Cookson Plastic and Pacific Industries for $10,000,000 excess liability. (*Id*.) Defendant Zurich American Insurance Company ("Zurich") insured SCP for $1,000,000 primary liability, and Defendant Chubb National Insurance Company ("Chubb") was contracted to provide $10,000,000 in excess liability for SCP. (*Id*.)

When reviewing a Rule 12(b)(6) motion, we take as true all allegations in Plaintiff's complaint. *See Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). The following version of events therefore presumes Plaintiff can prove all attendant allegations.

The discovery period for the underlying tort action took place over the course of approximately 16 months. Plaintiff first learned of SCP's and Cookson/Pacific's primary liability insurance and limits in September 2002 in responses to interrogatories and requests for production of documents (Compl. ¶ 12.) Over the course of the next year, Plaintiff's counsel and counsel for SCP and Cookson/Pacific exchanged correspondence and requests over the details of insurance coverage, in particular the existence and extent of any excess liability insurance coverage. (*Id.* ¶ 13-24.) Plaintiff repeatedly requested information on any excess liability coverage. (*Id.*)

3

In September 2003 counsel for Cookson/Pacific revealed $10,000,000 in excess liability insurance with the Fireman's Fund. (*Id.* ¶ 20.) In November 2003 counsel for SCP disclosed SCP's $10,000,000 excess liability policy with Chubb. (*Id.* ¶ 21.) Also in November 2003 counsel for SCP stated that he had "now received correspondence from both [Zurich] and Chubb confirming that they have not raised any coverage defenses or reservation of rights . . . regarding the subject litigation."[1] (*Id.* ¶ 23.) That same month, "[Pacific] admitted there were no coverage defenses, reservation of rights or any other coverage questions between Pacific and [AEIC] and Fireman's Fund Insurance Companies."[2] (*Id.* ¶ 24.) Cookson also "admitted there were no coverage defenses, reservation of rights or any other coverage questions between Cookson and [AEIC] and Fireman's Fund Insurance Companies." (*Id.*)

The underlying tort case was scheduled for mediation on March 13, 2004. (*Id.* ¶ 25.) Plaintiff's mother drove Plaintiff, a quadriplegic, to the mediation. (*Id.* ¶ 28.) Plaintiff's counsel presented a summary of Plaintiff's case. (*Id.*) After a recess, defendants returned to the mediation session and counsel for SCP and Cookson/Pacific informed the mediator and Plaintiff that "there were insurance coverage questions between or among the insurance companies, SCP and/or

---

[1]The sentence reads in full: "Please be advised that I have now received correspondence from both Zurich Insurance Company and Chubb confirming that they have not raised any coverage defenses or reservation of rights relative to the insurance coverage issued to South Central Pool Supply, Inc. regarding the subject litigation." Letter from Neal Smith (Smith, Atkins & Thompson, PLLC) (counsel for SCP) to Joe Savage (Savage, Garmer, Elliott & O'Brien, PLLC) (counsel for Plaintiff) (November 21, 2003).

[2]The Complaint paragraph addressing Pacific and Cookson's admissions with respect to coverage issues actually states that these statements took place on November 6, *2002.* Given the rest of Plaintiff's timeline, this Court will grant Plaintiff the benefit of the doubt and presume Plaintiff meant that these admissions took place in November *2003.* In any event, the apparent typographic error has no effect on this Court's analysis.

Cookson/Pacific and that the mediation was being terminated."[3]  (*Id.*)  The mediation was terminated.  (*Id.*)

According to the district court, "the parties to the underlying tort action were able to resolve all claims (except the instant causes of action against the insurance companies) during a second mediation on April 9, 2004."  *Torres v. One Beacon Ins. Co.*, No. 04-191-KSF (E.D. Ky Sept. 24, 2004).  The settlement reached in the underlying tort action remains confidential, but Plaintiff stated during oral argument that under the settlement Plaintiff reserved the right to pursue the current action; Defendants' counsel did not argue otherwise.

## II.     Procedural History

On April 4, 2004, Plaintiff brought the instant action against Defendants One Beacon, AEIC, Fireman's Fund, Zurich, and Chubb, also in Clark Circuit Court.  (Compl. at 1.)  Plaintiff alleges that Defendants' conduct 1) violated Kentucky's Unfair Claims Settlement Practices Act, Ky. Rev. Stat. Ann. § 304.12-230 (2004); 2) constituted bad faith; 3) constituted fraud, willful misrepresentation, negligent misrepresentation, and/or concealment; 4) constituted outrageous conduct; and 5) constituted intentional and/or negligent infliction of emotional distress.  (*Id.* ¶ 29-33.)  Plaintiff alleges "severe emotional distress, mental anguish, and unnecessary expense" and seeks compensatory and punitive damages.  (*Id.* ¶ 34-35.)  Defendants removed the case to the United States District Court for the Eastern District of Kentucky on April 23, 2004.  Notice of Removal,

---

[3]This quotation comes from the language of the complaint and is not a quotation from the mediation session itself.

No. 04-6246

*Torres v. One Beacon Ins. Co.*, No. 04-CI-00192 (E.D.Ky. April 23, 2004) (subsequently renumbered as No. 04-191-KSF).

In May 2004, all Defendants moved to dismiss the complaint. *Torres*, No. 04-191-KSF, at 1. The district court granted Defendants' motions, in their entirety, on September 24, 2004 and dismissed Plaintiff's complaint with prejudice. *Id.* at 20. On the same day, Plaintiff filed his notice of appeal to this Court.

**ANALYSIS**

**I.      STANDARD OF REVIEW**

This Court reviews *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (citing *Valassis Commc'ns v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996)).

In considering whether a complaint fails to state a claim upon which relief can be granted, this Court construes "the complaint in the light most favorable to the plaintiff, accept[s] all factual allegations [of the plaintiff] as true, and determine[s] whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004) (internal quotations and citations omitted). Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

6

## II. THE CLAIM UNDER THE KENTUCKY UNFAIR CLAIMS SETTLEMENT PRACTICES ACT

Plaintiff's claim under the Kentucky UCSPA hinges on the threshold matter of whether the UCSPA applies to conduct by insurance companies taken after litigation commences. Because we find that the UCSPA does not apply, we affirm the district court's dismissal of Plaintiff's UCSPA claim.

### 1. Plaintiff's Claim Under the UCSPA

Plaintiff charges that Defendants violated § 1 of the UCSPA "in that these companies misrepresented pertinent facts or insurance policy provisions relating to coverages at issue," and § 14 "in that these companies failed to promptly provide a reasonable explanation of the basis in the insurance policy for denial of claims or for the offer of a compromise settlement."[4] (Compl. ¶ 29.) These claims are apparently rooted in the allegation that Defendants first denied that there were any coverage defenses or coverage questions, only to raise such issues during the first attempt at mediation in March 2004, which caused that mediation session to be terminated.

### 2. The District Court's Dismissal of Plaintiff's UCSPA Claim

---

[4]The language of the complaint tracks the language of the statute itself. The UCSPA states:
It is an unfair claims settlement practice for any person to commit or perform any of the following acts or omissions:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
. . .
(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
Ky. Rev. Stat. Ann. § 304.12-230 (2004).

The district court agreed with Defendants' argument that conduct occurring after the commencement of litigation could not form the basis of a UCSPA claim and therefore dismissed Plaintiff's claim under the UCSPA . *Torres*, No. 04-191-KSF, at 9, 11. In reaching this conclusion, the district court recognized that "there is no published Kentucky decision directly on point," but essentially adopted the reasoning of an unpublished Kentucky Court of Appeals decision, *Knotts v. Zurich Insurance Co. Torres,* No. 04-191-KSF, at 5-11 (analyzing *Knotts v. Zurich Ins. Co.*, No.2002-CA-001846-MR, 2004 WL 221213 (Ky. Ct. App. Feb. 6, 2004) (as modified April 30, 2004)). The district court looked at the language of the UCSPA and determined that the statute's repeated use of the word "claims" rather than litigation is unambiguous and demonstrates "that the General Assembly did not intend for the UCSPA to regulate anything but the conduct of insurance companies in the adjustment of claims *prior to* the commencement of litigation." *Id.* at 9. The court also concluded that "if the legislature had intended for the UCSPA to apply to actions by insurance companies after the initiating of litigation, it would have so provided." *Id.*

The Supreme Court of Kentucky granted discretionary review in the *Knotts* case on February 9, 2005. *See Knotts v. Zurich Ins. Co.*, No. 2004-SC-0400-DG (Ky. Feb. 9, 2005 (order granting discretionary review). The Court noted in the grant of discretionary review that "[i]ssues in this case include whether the Kentucky Unfair Claims Settlement Practices Act applies to conduct which occurs after the commencement of litigation or is limited to conduct during the claims adjustment period." Supreme Court of Kentucky, *Discretionary Review Granted (Pending Cases Only)* 18, http://www.kycourts.net/Supreme/documents/discretionarygranted.pdf. As of this writing, the Supreme Court of Kentucky has not issued a decision in the case.

### 3. The District Court Correctly Concluded That the UCSPA Does Not Apply Once Litigation Begins.

We agree with the district court's analysis of the UCSPA. The district court properly looked to the statutory provision as a whole and understood the provision to make distinct use of the terms "litigation" and "claim."[5] This analysis comports with direction from the Supreme Court of

_____

[5]The UCSPA provision reads in full:

It is an unfair claims settlement practice for any person to commit or perform any of the following acts or omissions:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(8) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(9) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(10) Making claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made;

(11) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(12) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

Kentucky that courts "in construing an extant act may refer to prior acts or sections of the statute relating to the same subject in ascertaining the meaning of the law under consideration." *Burbank v. Sinclair Prairie Oil Co.*, 202 S.W.2d 420, 424 (Ky. 1946).  Plaintiff helpfully instructs us to follow the clear language of the statute but then references *Black's Law Dictionary* to come up with a definition of "claim" as a "cause of action."  (*See* Pl. Br. at 13.)  Were this Court to follow Plaintiff's advice to follow the clear language of the statute, we would not consult a specialized dictionary for the definition of a term used.  Rather, we would reference a general dictionary to find that "claim" has several listed definitions. *See Webster's Third New International Dictionary* 414 (1993).  Because "claim" has multiple meanings, this Court must look to the context of the term's usage to understand the drafter's intent.

UCSPA uses "claim" in the context of a law regulating the insurance industry.  The common understanding of "claim" with reference to insurance is a demand for insurance payment under the terms of the insurance contract.  Moreover, the statute uses "claim" as distinct from "litigation," evidencing the Kentucky legislature's intent to distinguish between the claims adjustment phase and a litigation phase.  As further evidence, all the usages of "claim" in section 301.12-230 are

---

(13) Failing to promptly settle claims, where liability has become reasonably clear, under one (1) portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;
(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or
(15) Failing to comply with the decision of an independent review entity to provide coverage for a covered person as a result of an external review in accordance with KRS 304.17A-621, 304.17A-623, and 304.17A-625.

Ky. Rev. Stat. Ann. § 304.12-230 (2004).

consistent with the common understanding of "insurance claim," while not all usages are consistent with an understanding of "claim" to encompass a legal claim or cause of action, *see, e.g.*, § 301.12-230(10).

Most persuasively, the Kentucky Court of Appeals has found that the UCSPA does not address litigation behavior. *See Knotts v. Zurich Ins. Co.*, No. 2002-CA-001846-MR, 2004 Ky. App. LEXIS 22, at *14 (Ky. Ct. App. 2004). While Plaintiff correctly points out that while under a pending review by the Supreme Court of Kentucky the *Knotts* decision is not deemed final *(see* Pl. Br. at 5-7), that should not and does not deter this Court from taking that opinion into consideration when there are no published decisions on point, or, alternatively, from considering the court's reasoning. The *Knotts'* court points out that the impetus behind the UCSPA was not to exercise control over insurance litigation, but to exercise control over the claims adjustment process such that litigation occurred less frequently. *Knotts*, 2004 Ky. App. LEXIS 22, at *9-10. We find the Kentucky Court of Appeals' reasoning persuasive.

Plaintiff points to a prior Kentucky Court of Appeals decision which held that the UCSPA *did* apply during litigation. (Pl. Br. at 11, *citing Am. Physicians Assur. Corp. v. Schmidt*, No. 2002-CA-001292-MR, 2003 WL 22927781 (Kt. Ct. App. Dec. 12, 2003). The court's treatment in *Schmidt*, however, consisted entirely of a conclusory statement that the argument that the UCSPA did not apply in litigation was "without basis in fact and is clearly contradicted by the language of the law, and the relevant case law." *Id.* This stands in direct contrast to the same court's treatment in *Knotts*, which took several pages to analyze the statute, its policy, and the relevant law. *Knotts*,

11

2004 Ky. App. LEXIS 22, at *7-14. Moreover, as the district court correctly noted, one of the concurring judges in *Schmidt* actually authored the opinion in *Knotts*. *See id.* at *1.

Because we find that the UCSPA does not address behavior after the commencement of litigation, this Court need not opine on Defendants' arguments that interpreting the statute to apply once litigation begins would violate the Kentucky state constitution. Accordingly, this Court affirms the district court's dismissal of Plaintiff's UCSPA claim.

## III.    THE COMMON LAW BAD FAITH CLAIM

The district court correctly interpreted Kentucky law to require that before a third party claimant can bring a common law bad faith claim against an insurer, the third party claimant must plead that the first party insured has assigned his rights as against the insurer to the third party claimant. Because Plaintiff did not (and apparently could not) make any such pleading in this case, the district court was correct in its dismissal of Plaintiff's common law bad faith claim.

### 1.    Plaintiff's Common Law Bad Faith Claim

Plaintiff charged in Count II of his complaint that the conduct of Defendants "constitutes bad faith in violation of their duty to exercise good faith and act reasonably to fairly handle Torres' claims." (Compl. ¶ 30.)   In summary, the complaint in its entirety alleges facts contending 1) that defendants' counsel in the underlying case initially informed Plaintiff that Defendant insurance companies had not raised any coverage defenses or reservation of rights (*id.* ¶¶ 21, 24), 2) that at the first mediation, counsel for defendants in the underlying case informed Plaintiff that "there were

insurance coverage questions between or among the insurance companies, SCP and/or Cookson/Pacific" (*id.* ¶ 28), and 3) that as a result, the mediation was terminated (*id.*).

Nowhere does the complaint allege that the defendants in the underlying action have assigned their rights against Defendant insurance companies to Plaintiff. Plaintiff's brief concedes that there was no assignment in this case. (Pl. Br. at 20.)

2.    **Kentucky Law Requires a Third Party Claimant to Plead and Prove Assignment**

The Supreme Court of Kentucky has addressed common law bad faith claims in the context of insurance contracts in a number of cases spanning the past three decades. A proper synthesis of these cases produces an undeniable understanding that Kentucky common law bad faith arises in the insurance context only when a privity relationship exists between claimant and the insurance company.

In *Manchester Insurance & Indemnity Co. v. Grundy*, 531 S.W. 2d 493 (Ky. Ct. App. 1976), a third-party claimant injured in a pedestrian/automobile accident with the first-party insured sued the insurer, alleging bad faith in failing to settle his claim and pleading an assignment of rights from the first-party insured, *id.* at 494-95. The case required the court to undertake "a consideration of the proper application of a test to determine 'bad faith' on the part of an insurance company in failing to settle a claim." *Id.* at 496. Faced as it was with a third-party claimant, the court first noted that "[t]here is no privity of contract between the insurer and the claimant, so the insurer is never guilty of 'bad faith' to the claimant. The claimant can only look to the insured for satisfaction of the judgment unless the insured makes an assignment to the claimant, as was done here." *Id.* at 498 (citations omitted).

13

While Kentucky law has evolved since the *Grundy* decision to permit tort damages for bad faith on the part of an insurer, the Supreme Court of Kentucky has not extended insurance company liability to third party claimants lacking an insured's assignment of rights. A 1989 decision, *Curry v. Fireman's Fund Insurance Co.*, overruled a previous decision of the court and permitted punitive damages for an insurance company's bad faith. 784 S.W.2d 176, 198 (Ky. 1989) (overruling *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844 (Ky. 1986), which had precluded the recovery of punitive damages, and returning to the state of law as articulated by *Feathers v. State Farm Fire & Cas. Co.*, 667 S.W.2d 693 (Ky. Ct. App. 1983)). The *Curry* court noted that "the essence of a claim for first party bad faith is exposure of the insurance carrier to damages recoverable in tort. Such a claim should not be lightly entertained in view of the contractual nature of the parties' original relationship." *Id.* at 178. Both *Hornback* and *Curry* involved claims by first-party insured claimants.

In *Wittmer v. Jones*, 864 S.W.2d 885, 886 (Ky. 1993), the Supreme Court of Kentucky synthesized its "three recent decisions . . . recogniz[ing] a cause of action to recover tort damages against insurance companies upon proof of bad faith failure to pay claims clearly due and payable." In addition to *Curry*, which recognized a common law bad faith cause of action, the court discussed *Stevens v. Motorists Mutual Insurance Co.*, 759 S.W.2d 819 (Ky. 1988), "recognizing a statutory bad faith claim by an insured against his own insurer under the Consumer Protection Act, [Ky. Rev. Stat. Ann.]§ 367.110 *et seq*.," and *State Farm Mutual Automobile Insurance Co. v. Reeder*, 763 S.W.2d 116 (Ky. 1988), "recognizing the existence of a claim by a third-party for damages sustained by reason of an insurance company's violation of" the UCSPA. *Id.* The court held that the elements

14

of a common law bad faith tort claim were, likewise, the elements of a statutory claim: 1) that the insurer is obligated to pay the claim under the terms of the policy; 2) that the insurer lacks a reasonable basis in law or fact for denying the claim; and 3) that the insurer knowingly or recklessly denied the claim without a reasonable basis. *Id.* at 890 (citations omitted).

In *Davidson v. American Freightways*, 25 S.W.3d 94 (Ky. 2000), on which Plaintiff relies heavily, the Supreme Court of Kentucky explained that in *Wittmer*, it had "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation." 25 S.W.3d at 100 (citing *Wittmer*, 864 S.W.2d at 890). The court then reiterated the elements of a bad faith claim, summarized in the preceding paragraph of this opinion.

Plaintiff insists that *Wittmer*, as interpreted by *Davidson*, eliminates the requirement set forth in *Grundy* that a third-party claimant attempting to recover from an insurer receive an assignment of rights from the first-party insured. According to Plaintiff, *Wittmer* and *Davidson* mean that the three elements common to all bad faith claims are *all* that *any* claimant is required to show. (Pl. Br. at 20.) Plaintiff's argument is unpersuasive. The district court correctly determined that while *Wittmer* set forth the three elements necessary in *any* bad faith claim, it did not do away with the requirement that a *third party* may only bring a bad faith action against the insurer in a derivative capacity, as the assignee of the insured.

The *Wittmer* court never announced that it was eliminating the assignment requirement set forth in *Grundy*; rather, it confined itself to a discussion of the elements common to all bad faith

claims. Likewise, in summarizing the evolution of bad faith law in Kentucky, the *Davidson* court certainly did not explicitly eradicate the *Grundy* requirement. Moreover, in a case decided after *Wittmer*, *Motorists Mutual Insurance Co. v. Glass*, 996 S.W.2d 437, 451-52 (Ky. 1997), the Supreme Court of Kentucky endorses the distinction between first and third-party bad faith claims, *see id.* at 451-52 (discussing the evolution of bad faith law in Kentucky and repeatedly distinguishing between first and third-party actions).

The *Davidson* case itself does not support Plaintiff's argument when we view the case in its entirety. The *Davidson* court opined that the *Wittmer* decision was a restatement of Kentucky law as it existed prior to the mid 1980s elimination of punitive damages for an insurer's bad faith, "that a cause of action for bad faith arises out of a *breach of contract* 'so great that it would constitute tortious conduct on the part of the insurance company.'" *Davidson*, 25 S.W.3d at 100 (emphasis in original) (quoting *Feathers*, 667 S.W.2d at 696). The state of law at the time of the *Feathers* decision required a third party claimant to procure an assignment of rights from the insured. *See Grundy*, 531 S.W. 2d at 498.

### 3. The District Court Correctly Concluded That Plaintiff Failed to State a Common Law Bad Faith Claim Under Kentucky Law

Plaintiff did not allege that the underlying defendants assigned their rights against the instant Defendants to collect for monies or damages due under the relevant insurance contracts, and Plaintiff's brief concedes that there was no assignment in this case. (Pl. Br. at 20.) Because the Supreme Court of Kentucky has never abolished the requirement of an assignment of rights to a third-party claimant attempting to sue an insurance company for bad faith, and instead has appeared

to endorse the continuing viability of that requirement, the district court correctly concluded that Plaintiff has failed to state a common law bad faith claim under Kentucky law.

## IV.    THE FRAUD CLAIM

Plaintiff contends that the Complaint, taken in its entirety, pleads particular facts sufficient to sustain a cause of action for fraud.  (Pl. Br. at 22-23.)  Defendants and the district court disagree. Plaintiff fails to demonstrate to this Court, however, that Plaintiff has even pled all six elements of the tort of fraud under Kentucky law as a threshold matter.

### 1.    Fraud Claims Under Kentucky Law

Pursuant to both the Federal and Kentucky Rules of Civil Procedure, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); Ky. R. Civ. P. 9.02(c).  Moreover, under Kentucky law, fraud consists of six elements:

    1) material representation
    2) which is false
    3) known to be false or made recklessly
    4) made with inducement to be acted upon
    5) acted in reliance thereon and
    6) causing injury.

*United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).  A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery.  If it fails to do so, the claim may be dismissed pursuant to Rule 12(b)(6).  *In re DeLorean Motor Co.*, 991 F.2d at 1240.

### 2.    The District Court Properly Dismissed Plaintiff's Fraud Claim

17

The district court dismissed Plaintiff's fraud claim for failure to state a claim upon which relief could be granted. *Torres*, No. 04-191-KSF, at 16. The court determined that Plaintiff had failed to allege sufficient facts to satisfy the elements of a fraud claim under Kentucky law, and that Plaintiff had failed to plead facts with sufficient particularity to meet the requirements of the civil procedure rule. *Id.* The court specifically found "insufficient allegations regarding which representations were known to be false or made recklessly, that they were made with the inducement to be acted upon, or that [Plaintiff] somehow acted in reliance thereon." *Id.* The court also noted that "the representations of which he complains, that there were no coverage disputes, reservations of rights or coverage questions prior to the March Mediation, were made by counsel for the defendants in the underlying tort action," and not by Defendant insurance companies. *Id.*

A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. If it fails to do so, the claim may be dismissed pursuant to Rule 12(b)(6), as it was in this case. *In re DeLorean Motor Co.*, 991 F.2d at 1240.

In the view of this Court, Plaintiff's allegations—that counsel for the underlying defendants denied that there were any coverage disputes, and that such disputes arose at the mediation only after Plaintiff's counsel had made a presentation of his evidence at trial—do not suffice to meet the elements of a Kentucky fraud claim. As the district court pointed out, the complaint contains no allegations in support of the third, fourth, and fifth elements of a fraud claim: that the statements made were known to be false, or are made recklessly, that they were made with inducement to be acted upon, and that they were acted in reliance upon. Although the district court presumed that the

statements alleged to be false were those made by the underlying defendants' counsel, to the effect that there were no coverage disputes, this is not alleged anywhere in the complaint with particularity, as required by the civil procedure rules, and, in any event, Defendants are not liable for statements made by others. Therefore, this Court affirms the district court's dismissal of Plaintiff's fraud claim.

## V. THE OUTRAGEOUS CONDUCT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS

Although Plaintiff alleges outrage and intentional infliction of emotional distress in two separate counts of his complaint, they are the same tort under Kentucky law. *See Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky. Ct. App. 2001).

The Supreme Court of Kentucky recognized the tort of outrage, or intentional infliction of emotional distress, in *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984). The court adopted the Restatement (Second) of Torts § 46, which states that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Craft*, 671 S.W.2d at 251 (quoting Restatement (Second) of Torts § 46). The court emphasized that a showing of bodily harm was not required. *Id.*

The elements of an outrageous conduct claim are: "[1)] [t]he wrongdoer's conduct must be intentional or reckless; [2)] the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; [3] there must be a causal connection between the wrongdoer's conduct and the emotional distress and [4)] the distress suffered must be severe." *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000). The tort is not available for "petty insults, unkind words and minor indignities," *Kroger Co. v. Willgruber,* 920 S.W.2d 61, 65 (Ky.

19

1996), or for behavior that is "cold, callous and lacking sensitivity." *Humana of Ky., Inc. v. Seitz*,796 S.W.2d 1, 3-4 (Ky. 1990). "Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Osborne*, 31 S.W. 3d at 914 (citations omitted).

As a threshold matter, Plaintiff fails to plead conduct that at least approaches "truly outrageous, intolerable" behavior necessary for this tort. *See id.*; *see also DeLoach v. American Red Cross*, 967 F. Supp. 265, 269 (N.D. Ohio 1997) (finding that plaintiff had failed to allege conduct sufficiently objectionable to survive a Rule 12(b)(6) motion) (applying Ohio law).[6] Plaintiff alleges misrepresentations during the course of litigation that caused a quadriplegic, in essence, time and inconvenience, false hope, and additional expense. Even had Plaintiff successfully asserted a claim for fraud on the part of Defendants, however, such misrepresentations are not the stuff of the tort for outrageous conduct. As the district court noted "the only conduct complained of by Plaintiff . . . is that the attorneys *for the defendants in the underlying action* (as opposed to the insurers or their agents) represented to Plaintiff's counsel that there were no coverage disputes, reservation of rights or coverage questions prior to the March mediation. Then, because coverage questions *among the various insurers* allegedly arose during the mediation, Plaintiff insinuates that this was 'outrageous conduct.'" *Torres*, No. 04-191-KSF, at 18. The court noted that Plaintiff could not cite to any case that would support an argument that the insurance companies' conduct—in announcing coverage

---

[6]Ohio has similarly adopted the Restatement (Second) of Torts on the tort of outrageous conduct.

disputes during the mediation —would "offend generally accepted standards of morality and decency." *Id.* at 74.

This Court agrees with the district court. Plaintiff has failed to allege conduct even arguably capable of "bringing one to his knees." We affirm the district court's dismissal of this claim.

## VI.    THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

While Plaintiff phrases the issue in this appeal as "[w]hether the District Court's dismissal of all claims" was proper, Plaintiff has failed to argue in his brief that the lower court's dismissal of Plaintiff's negligent infliction of emotional distress claim was improper. Accordingly, Plaintiff has waived this argument. *See Kocsis v. Multicare Mgt., Inc.*, 97 F.3d 876, 881 (6th Cir. 1997). We affirm the district court's dismissal of this claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Plaintiff's claims.