Deborah W. **KANE** and Andrew Kane, Plaintiffs–Appellants,

v.

**MAGNA MIXER COMPANY** and Paul L. Kramer, Defendants–Appellees.

No. 94–4001.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 19, 1995.

Decided Dec. 7, 1995.

Ralph F. Mitchell, D. Michael Poast (briefed), Robert F. Brown (briefed), Rendigs, Fry, Kiely & Dennis, Cincinnati, OH,

Andrew M. Stone (argued and briefed), Stone & Stone, Pittsburgh, PA, for Plaintiffs-Appellants.

Clem C. Trischler (argued and briefed), Pamela G. Cochenour, Pietragallo, Bosick & Gordon, Pittsburgh, PA, for Defendants-Appellees.

Before: MERRITT, Chief Judge; KENNEDY, Circuit Judge; JOINER, District Judge.[*]

JOINER, District Judge.

Plaintiff Deborah Kane suffered an on-the-job injury while operating equipment manufactured decades ago by a company that since has ceased manufacturing operations. This case represents Kane's second attempt to prosecute a viable cause of action against a collectible defendant. Not surprisingly, defenses of res judicata, collateral estoppel and waiver were asserted, and the district court was persuaded that res judicata barred this action. We affirm, although not entirely for the reasons stated by the district court. In doing so, we decide an issue of first impression in this court, the circumstances under which a claim for indemnity must be asserted in the lawsuit for which indemnity is sought.

## I.

Triumph Manufacturing Company, an Ohio corporation, was a manufacturer of industrial dough mixers, including a mixer sold in 1948 to the Daisy Cookie Company of Pittsburgh, Pennsylvania. Forty years later, Deborah Kane, a Daisy employee, was injured while operating the Triumph mixer, and lost two fingers of one hand.

In 1984, four years before Kane's injury, Triumph entered into an asset purchase agreement with defendant Magna Mixer Company, also an Ohio corporation, pursuant to which Magna purchased Triumph's manufacturing equipment, designs, materials, implements, inventory, name and the goodwill associated with two product lines of industrial mixers. The sale was an arms-length transaction, and Triumph remained in business as a financial consulting firm for a period of time after the sale.

Only selected provisions of the asset purchase agreement are relevant to this case. The first is paragraph three, which provides that Magna "shall not assume any obligations or liabilities of the Seller with respect to the Transferred Assets or any open purchase orders with respect thereto, whether such liabilities are matured or unmatured, fixed, contingent or otherwise." The second is paragraph 12, pursuant to which the parties give each other complementary indemnity agreements. Paragraph 12(A) obligates Triumph to indemnify Magna from "[a]ny and all claims, liabilities and obligations or every kind and description, contingent or otherwise, arising from or related to the Transferred Assets prior to the Closing hereunder." Paragraph 12(B) contains the identical provisions flowing from Magna to Triumph, except that the claims, liabilities and obligations referred to are those "arising from or relating to the Transferred Assets subsequent to the Closing hereunder."

**Prior Lawsuit**

In 1990, Kane and her husband filed a products liability suit against Magna in federal district court in Pennsylvania to recover for the injuries allegedly caused by the Triumph mixer. Magna filed a third-party complaint against Triumph, seeking contribution and both common law and contractual indemnity. The Kanes then amended their complaint to assert claims against Triumph directly, and set forth causes of action for negligence and strict liability against both defendants. The Kanes did not identify the basis on which they claimed that Magna bore successor liability for Triumph's design and manufacture of the mixer in question, but simply alleged that Magna was Triumph's successor.

Magna moved for summary judgment, claiming that as an asset purchaser, it was not Triumph's successor and was not liable for Triumph's pre-asset sale conduct. In opposing Magna's motion, the Kanes ac-

[*] The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

knowledged that an asset purchaser generally is not liable for the debts and liabilities of its transferor, but contended that Pennsylvania's "product line" exception to the rule against non-liability applied to Triumph's asset sale to Magna. The district court found it unnecessary to determine whether Pennsylvania law governed Magna's alleged successor liability, holding that the product line exception would not permit a finding of liability regardless. The court thus granted Magna's motion for summary judgment, and permitted the Kanes to appeal this partial judgment pursuant to FED.R.CIV.P. 54(b), while the claims against Triumph remained pending in the district court.

Before the Third Circuit, the Kanes challenged the district court's application of the product line exception and argued, for the first time, that Magna was liable to them because it had assumed Triumph's liabilities by virtue of Magna's agreement to indemnify Triumph pursuant to paragraph 12(B) of the agreement. The Third Circuit affirmed, agreeing with the district court's application of Pennsylvania's product line exception, and rejecting plaintiffs' attempt to claim that Magna had assumed Triumph's liability for Deborah Kane's injuries.

> It appears that the Kanes never raised this argument before the district court. An argument may not be raised for the first time on appeal. In any event, it is by no means clear that the provisions of the agreement support the Kanes' argument. The district court's opinion quoted paragraph three of the agreement, which suggests that Magna did not assume any of Triumph's liabilities. This passing reference by the court was not sufficient to raise the issue that the Kanes now advance. Nor is it apparent that the agreement granted any rights to the Kanes, who are not parties to the agreement.

*Kane v. Magma Mixer Co.*, 950 F.2d 722 (3d Cir. 1991) (citation and footnotes omitted).

Although Triumph's president was deposed during the pendency of the Pennsylvania action, Triumph did not answer either complaint filed against it. The Kanes obtained a default judgment against Triumph prior to appealing the summary judgment in favor of Magna. After the Third Circuit ruled, the Kanes requested a hearing on damages and obtained an award of $635,000 against Triumph. Magna did not move for a default judgment on its third-party complaint against Triumph, and the case ultimately was closed after the Kanes' default judgment against Triumph was reduced to a sum certain.

**Kanes' Instant Suit as Triumph's Assignees**

The Kanes were unable to collect on their default judgment against Triumph, and, in 1993, Triumph assigned to the Kanes its alleged right to contractual indemnity from Magna. The Kanes again filed suit against Magna, this time in federal court in Ohio. The Kanes did not assert a claim against Magna in their own right, instead proceeding solely as assignees of Triumph's contractual indemnity rights against Magna. Their complaint seeks a declaratory judgment that Triumph was entitled to indemnity from Magna, and that the Kanes, as assignees of that right to indemnification, are entitled to damages of $635,000.

Magna moved to dismiss the complaint under FED.R.CIV.P. 12(b)(6), claiming that res judicata and waiver barred plaintiffs' claims. On referral for report and recommendation, the magistrate judge recommended that the motion be granted, concluding that Triumph's alleged right to indemnity from Magna was a claim that could and should have been raised in the prior action by both Triumph and the Kanes, and thus was barred by res judicata. Focusing on the Kanes' status as Triumph's assignees, the magistrate judge stated that Triumph waived its indemnity claim by failing to assert it as a compulsory counterclaim under FED.R.CIV.P. 13(a), and by failing to assert the claim in response to the Kanes' amended complaint. The magistrate judge further stated that the Kanes themselves had had the opportunity to raise the asset purchase agreement in their earlier attempt to impose successor liability against Magna. The magistrate judge noted that the Kanes relied on the indemnity agreement before the Third Circuit, and stated that they were attempting to present the "same issue" in this case. The district court

adopted the magistrate judge's report and recommendation over plaintiffs' objections, holding that res judicata bars all claims that were brought and could have been brought in the first action. The district court rejected plaintiffs' argument that they had not acquired their indemnity claim until after the first action was resolved, adopting the magistrate judge's view that they could have raised the argument in the first action.

## II.

On appeal, the Kanes contend that their personal failure to assert an indemnity claim in the Pennsylvania action has no effect on their ability to do so in the instant case, for the simple reason that they now sue as assignees of Triumph's contractual rights. According to the Kanes, the sole question is whether Triumph waived its indemnity claim by failing to raise it as a counterclaim to Magna's third-party claim. As to this issue, the Kanes argue that Triumph's indemnity claim was a permissive, rather than mandatory, counterclaim, and thus was not waived. Magna defends the district court's dismissal, contending that res judicata bars the Kanes' suit due to the failure of both Triumph and the Kanes to raise the indemnity claim in the first action. Magna further contends that the indemnity claim is barred by collateral estoppel.

■ This court reviews the dismissal of a case on claim or issue preclusion grounds de novo. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir.1994). Prior to turning to the central question posed by this appeal, we first dispense with two assertions made by Magna that have complicated an otherwise straightforward procedural question.

■ Magna contends that the Kanes' present ability to assert their assigned indemnity claim is foreclosed by *their* failure— as distinct from Triumph's—to assert this claim in the Pennsylvania action. We hold that the Kanes are not foreclosed for this reason. The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the "parties or their privies from relitigating issues that were or could have been raised" in a prior action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). As stated by this court, res judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

■ The proposition that the Kanes' failure to raise their assigned indemnity claim in the Pennsylvania action precludes them from doing so now founders on the third and fourth elements. The Kanes did not acquire the indemnity claim they now assert until Triumph assigned the claim to them in September 1993, eighteen months after the Pennsylvania case was closed. Simply put, the Kanes could not have asserted a claim that they did not have at the time. *Cf. Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 868–69, 99 L.Ed. 1122 (1955) (judgment in first case cannot extinguish claims based on conduct post-dating the judgment; claims did not exist at time judgment was entered and could not have been sued upon at that time). Additionally, the district court erred in characterizing Triumph's indemnity claim against Magna, later assigned to the Kanes, as the "same issue" as that posed by the Kanes' successor liability claim against Magna. The differences between successor liability and contractual indemnity claims are significant, and pertain to, e.g., who may assert the claim, the circumstances under which liability exists, the extent of liability, and the date on which the claim accrues.[1] In light of these

---

1. Whether an entity bears successor liability determines whether that entity can be directly liable to persons harmed by its predecessor's conduct. 19 Am.Jur.2d *Corporations* § 2726 (1986).

The law will impose successor liability where the purchaser expressly or impliedly assumes the seller's liabilities, or where the corporate transaction amounts to a de facto merger, the transac-

distinctions, it cannot seriously be questioned that Triumph's indemnity claim, even as assigned to the Kanes, is fundamentally distinct from the Kanes' products liability claim against Magna as Triumph's alleged successor. Thus, the indemnity claim is not barred because of the Kanes' prior prosecution of the successor liability claim. *Black,* 15 F.3d at 582 (second claim based on separate and discrete events and wrongful acts not the same cause as asserted in prior action; res judicata did not bar second claim).

▆▆▆▆▆ Magna further contends that the Kanes' indemnity claim is barred by the doctrine of collateral estoppel. Collateral estoppel, however, only bars relitigation of issues actually litigated and determined in an earlier action and necessary to the judgment. *Sanders Confectionery Prods.,* 973 F.2d at 480; *United States v. Berman,* 884 F.2d 916, 922 (6th Cir.1989). The question whether Magna is contractually obligated to indemnify Triumph was neither raised nor decided in the Pennsylvania action.[2] Moreover, a determination on that issue was not necessary to the Pennsylvania court's determination that Magna did not bear successor liability to the Kanes.

With these preliminary contentions resolved, we turn to the dispositive question in this appeal: Whether Triumph's failure to assert an indemnity counterclaim against Magna prevents its assignees from pursuing the indemnity claim in this action. The parties are in agreement that the Kanes have no greater rights than Triumph would have, and that their ability to seek indemnification depends on Triumph's actions in the underlying case. Whether the indemnity claim is barred turns on FED.R.CIV.P. 13:

**(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

**(b) Permissive Counterclaims.** A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

▆▆▆▆▆ The Kanes argue that Triumph's claim for indemnification against Magna had not matured and would not mature until a final judgment was entered against it, and, consequently, that the indemnity claim was a permissive rather than compulsory counterclaim. We disagree. The Kanes' assertion that the compulsory or permissive status of a counterclaim is determined by whether the claim is matured or unmatured is incomplete. Under the language of Rule 13(b), a claim's status as permissive turns on whether the claim "aris[es] out of the transaction or occurrence that is the subject matter of the opposing party's claim." If the claim *does* arise out of the same transaction or occur-

---

tion operates as a fraud on the seller's creditors, or the purchaser is a mere continuation of the seller. *Conway v. White Trucks,* 885 F.2d 90 (3d Cir.1989) (decided under Pennsylvania law); *Flaugher v. Cone Automatic Mach. Co.,* 30 Ohio St.3d 60, 507 N.E.2d 331 (1987), syllabus ¶ 1. Where successor liability is imposed, the person harmed by the seller's pre-sale conduct may sue the purchaser directly. A claim of contractual indemnity, on the other hand, exists in favor of the agreed-upon indemnitee, not the tort plaintiff. 41 AM.JUR.2D *Indemnity* § 50 (1995). The indemnity contract governs the scope of the agreement to indemnify, and the parties are free to identify a distinct set of liabilities as to which an indemnity obligation will be imposed. *Id.* § 12. The indemnity obligation frequently will encompass collateral losses incurred as a result of being sued, e.g., attorney fees and actual costs. An indemnity claim does not accrue when the underlying tort injury occurs, but later, when the indemnity claimant suffers a loss or when a claim is asserted against it. *Id.* §§ 43–44.

**2.** Clear evidence that Triumph's indemnity rights were not determined in the first action is found in Magna's assertion in this court that the indemnity claim has not yet accrued because Triumph did not pay the default judgment and has not yet suffered a loss. If Triumph's right to contractual indemnity had been decided in the first action, it would not be necessary for Magna to assert this argument here. We note, parenthetically, that Magna's argument lacks legal merit under the contract terms at issue. *Stengel v. Columbus,* 74 Ohio App.3d 608, 600 N.E.2d 248 (1991); *Firemen's Ins. Co. of Newark v. Antol,* 14 Ohio App.3d 428, 471 N.E.2d 831 (1984).

rence, it is not a permissive counterclaim, although, as seen below, it may not be required to be asserted. Pursuant to Rule 13(a), on the other hand, a claim's compulsory status depends on whether (1) the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; *and* (2) the claim is one that the party "has" at the time that the party is to file his responsive pleading. *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 360 (7th Cir.1990) (claim which arises out of the same transaction or occurrence as opposing party's claim is not permissive counterclaim under Rule 13(b); "the only reason it is not a Rule 13(a) counterclaim is that it did not exist when the complaint was filed.").

■ In determining whether Triumph's indemnity claim against Magna meets the compulsory counterclaim test, we look to Magna's third-party complaint against Triumph in the Pennsylvania case. There is no question but that Triumph's indemnity claim arises out of the same transaction as that asserted by Magna in that pleading. Magna's third-party complaint seeks contractual indemnity under paragraph 12 of the asset purchase agreement, the very same paragraph of the contract relied upon in this case. As noted, the parties' indemnity obligations are complementary, and it would be impossible to adjudicate Magna's rights without determining Triumph's as well. It is equally clear that Triumph possessed its indemnity claim against Magna at the time that Magna filed its third-party complaint. Resolution of Triumph's indemnity claim did not depend on any events that might post-date adjudication of Magna's claim but, rather, depended entirely on a transaction between the parties that already had occurred.

■ The Kanes argue that there was no need for either Magna or Triumph to assert an indemnity claim in the underlying action, because the outcome in that action would determine whether any such claim would be necessary. A defendant pondering the advisability of asserting an indemnity claim in the first instance might be persuaded to post-

pone action for this reason. *See generally* 6 CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1411 at 82–83 (1990). We cannot agree, however, that a third-party defendant against whom such a claim is made enjoys the same latitude in deciding whether to respond with an indemnity claim of its own. Permitting a third-party defendant such as Triumph to hold its indemnity claim in the wings, despite the assertion of a competing claim by the third-party plaintiff, would result in piecemeal litigation and a waste of judicial resources, and possibly lead to inconsistent results. Thus, we hold that once a defendant forces the issue by bringing an indemnity claim in the litigation for which indemnity is sought, the alleged indemnitor is obligated to assert its competing claims in a Rule 13(a) counterclaim.[3]

■ Having concluded that Triumph's counterclaim was compulsory and required to be raised in the Pennsylvania action, we need only determine the effect of Triumph's failure to do so. This court stated in another context:

As has been pointed out by a text writer, the result that a compulsory counterclaim is barred if not asserted as required by the rule is not spelled out in the rule itself. However, this result is well established by the cases, sometimes on a theory of res judicata and sometimes on a theory of waiver or estoppel. 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1417 (1971). This text prefers the waiver or estoppel theory because in some cases in which a claim is held to be barred the doctrine of res judicata does not fit and also because the waiver or estoppel theory allows more discretion not to hold the claim is barred where to do so is manifestly unjust.

*Carnation Co. v. T.U. Parks Constr. Co.*, 816 F.2d 1099, 1103 (6th Cir.1987) (determining effect of failing to assert compulsory counterclaim under Tennessee rule identical to Rule 13(a)). In most instances, application of either res judicata or waiver principles will yield the same result, but, like the panel in *Carnation*, we prefer the flexibility of a waiv-

---

3. *Contra Hall v. General Motors Corp.*, 647 F.2d 175 (D.C.Cir.1980).

er analysis to the more rigid rules applicable to res judicata.

Looking to Triumph's conduct in the underlying action, we find no basis to avoid the conclusion that Triumph waived its compulsory counterclaim. There is no claim of improper service or lack of knowledge on Triumph's part that the indemnity claim was pending against it. The Pennsylvania case was litigated as thoroughly as it could have been, given Triumph's failure to appear and defend. Seeking to excuse Triumph's inaction in response to Magna's third-party complaint, the Kanes contend that Magna had no incentive to litigate its indemnity claim once it succeeded in obtaining summary judgment on the Kanes' claim, and suggest that Triumph was therefore not obligated to vigorously assert its indemnity claim as a result. Even if Magna's indemnity claim became moot at this point, however, Triumph waived its competing indemnity claim months earlier by failing to raise it in response to the third-party complaint.

We are persuaded that Triumph waived its indemnity claim through its conduct of the underlying litigation, and hold that the Kanes, as Triumph's assignees, likewise are precluded from asserting that claim. We **AFFIRM** the district court on this basis.