RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0337p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MELISSA RAWE; THOMAS J. RAWE; KIMBERLY
RAWE,

*Plaintiffs-Appellants,*

No. 05-5485

*v.*

LIBERTY MUTUAL FIRE INSURANCE COMPANY;
CYNTHIA HOLTCAMP,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 04-00146—David L. Bunning, District Judge.

Argued: January 26, 2006

Decided and Filed: September 1, 2006

Before: SILER, BATCHELDER, and MOORE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Milton S. Goff, Ft. Mitchell, Kentucky, for Appellants. Peter Matthew Cummins, FROST BROWN TODD, Louisville, Kentucky, for Appellees. **ON BRIEF:** Milton S. Goff, Ft. Mitchell, Kentucky, for Appellants. Peter Matthew Cummins, Robert L. Steinmetz, FROST BROWN TODD, Louisville, Kentucky, for Appellees.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Plaintiffs-Appellants Melissa Rawe, Thomas Rawe, and Kimberly Rawe appeal the district court's grant of defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). After Melissa Rawe was severely injured in a car accident, she sought to recover under two insurance policies issued by Defendants-Appellees Liberty Mutual and Cynthia Holtkamp,[1] (referred to collectively as "Liberty Mutual"), who is one

---

[1]Holtkamp is the correct spelling of Defendant-Appellee Cynthia Holtkamp's last name, which was incorrectly spelled as Holtcamp by plaintiffs when they filed this case. Joint Appendix ("J.A.") at 6 (Notice of Removal at 1).

of Liberty Mutual's claims adjusters. When Liberty Mutual[2] refused to pay the insurance claim Rawe sought, she filed suit, alleging first- and third-party statutory and common law bad faith as well as breach of contract and fraud claims against Liberty Mutual. Liberty Mutual filed a motion for judgment on the pleadings, which the district court granted. For the reasons explained below, we **REVERSE** the district court's grant of judgment on the pleadings to Liberty Mutual on Rawe's first-party bad faith claims that are based upon defendant's alleged actions that occurred after the filing of Rawe's complaint in the first suit in October 2003, as they are not barred by claim preclusion. We also **REVERSE** the district court's dismissal of Rawe's third-party claims under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"). We **AFFIRM** the district court's grant of judgment on the pleadings to Liberty Mutual on Rawe's other claims.

## I. BACKGROUND

On September 22, 2000, Plaintiff-Appellant Melissa Rawe, then a minor, was a passenger in an automobile driven by Benjamin Haggard. Joint Appendix ("J.A.") at 16-17 (Compl. at ¶ 10). Haggard lost control of the vehicle, crossed the median in the road, and struck an oncoming vehicle, causing an accident in which Rawe sustained serious and permanent injuries. J.A. at 17 (Compl. at ¶ 10). Rawe's head trauma included "an injury to the right occipital lobe of her brain resulting in a 14% neuropsychiatric impairment and a permanent loss of a portion of her vision." J.A. at 17 (Compl. at ¶ 13). When the accident occurred, Haggard held a bodily injury policy ("bodily injury policy") with a limit of $100,000 with Liberty Mutual. J.A. at 17 (Compl. at ¶ 11); J.A. at 52 (Answer at 1). Rawe and her parents, Thomas and Kimberly Rawe, were also insured by Liberty Mutual pursuant to an underinsured motorist policy ("UIM policy"). J.A. at 17 (Compl. at ¶ 11); J.A. at 52 (Answer at 1). The UIM policy covered three vehicles owned by the Rawes and had a policy limit of $50,000/$100,000 per vehicle, per accident. J.A. at 117 (Oct. 2003 Compl. at ¶ 11).

After more than two years of negotiating with Liberty Mutual and with the assistance of an attorney, Rawe obtained a settlement for the full $100,000 available under Haggard's bodily injury policy in September 2002. J.A. at 19 (Compl. at ¶ 28); J.A. at 52 (Answer at 1). Rawe continued to pursue a claim under her family's personally held UIM policy, and when correspondence with defendant Liberty Mutual did not produce a settlement offer, Rawe filed suit in October 2003 to satisfy her claim under the UIM policy. J.A. at 115 (Oct. 2003 Compl.). Rawe brought her lawsuit in state court (No. 03-CI-2809), but Liberty Mutual removed the case to federal court, invoking diversity jurisdiction.[3] Docket Rep. in Case 2:03-CV-252-WOB at R.1. This case was mediated, and in February 2004 Liberty Mutual made its first offer of $35,000, which Rawe rejected. J.A. at 24 (Compl. at ¶ 57). Liberty Mutual made a further offer of $45,000 later in February 2004, which Rawe accepted. J.A. at 24 (Compl. at ¶¶ 59-60). On March 8, 2004, the district court entered a judgment in favor of Rawe for $45,000 plus interest. Docket Rep. in Case 2:03-CV-252-WOB at R.8. After this judgment was entered, defendant Liberty Mutual demanded that Rawe execute a Release and Settlement Agreement releasing any and all future claims, including claims that were not part of that action, before Liberty Mutual would comply with the judgment and render payment of the $45,000. J.A. at 24 (Compl. at ¶ 60); J.A. at 211-18 (Mar. 5, 2004 Letter and Proposed Release). Rawe refused to sign the release, J.A. at 225 (Mar. 17, 2004 Letter) and filed a motion

---

[2]Although all three of the Rawes are plaintiffs-appellants in this case, and both Liberty Mutual and Holtkamp are defendants-appellees, the issues raised in this appeal do not differ with respect to any of the individual parties. This dispute can fairly be summarized as a dispute between Melissa Rawe (the injured passenger and insured) and Liberty Mutual (the insurer). For the sake of convenience, we shall therefore refer to the two parties in the singular form — as Rawe and Liberty Mutual — throughout this opinion.

[3]Diversity exists between the Rawes, who are citizens of the Commonwealth of Kentucky, and Liberty Mutual, which is incorporated in and has its principal place of business in the Commonwealth of Massachusetts. J.A. at 7 (Notice of Removal at 2). Diversity also exists between plaintiffs and Holtkamp, as Holtkamp is a citizen of Ohio. *Id.*

for issuance of writ of execution to obtain the $45,000 judgment. J.A. at 226-27 (Mot. for Issuance of Writ of Exec.). Defendant Liberty Mutual eventually satisfied its obligation under the March 2004 judgment, and the district court issued an order of satisfaction and dismissal with prejudice on May 3, 2004. Docket Rep. in Case 2:03-CV-252-WOB at R.14.

Rawe filed this lawsuit on June 18, 2004 in Kentucky state court (No. 04-CI-1573) alleging that Liberty Mutual's actions during the attempted settlement of both the bodily injury and UIM claims violated the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA") (Count I), constituted a breach of contract and the tort of first- and third-party common-law bad faith (Count II), violated the Kentucky Consumer Protection Act ("KCPA") (Count III), and constituted fraud (Count IV). J.A. at 15-31 (Compl.). Liberty Mutual again sought removal, invoking diversity jurisdiction. J.A. at 6-10 (Notice of Removal). On October 4, 2004, Liberty Mutual filed a motion for judgment on the pleadings, J.A. at 97, 101 (Mot. and Mem. for Judgment on Pleadings), arguing that all of Rawe's claims failed as a matter of law. Liberty Mutual argued that Rawe's claims based upon alleged conduct occurring prior to the filing of the complaint in the first lawsuit in October 2003 are barred by the doctrine of res judicata, and that her claims that alleged conduct that occurred after the filing of the first lawsuit are insufficient for relief under Kentucky law. J.A. at 104-05 (Mem. in Support of Mot. for Judgment on Pleadings). Rawe opposed this motion, arguing that the claims based upon Liberty Mutual's conduct allegedly occurring both before and after the filing of the first lawsuit are not barred by res judicata, and that the alleged conduct after the filing of the first suit can support her bad-faith claims. J.A. at 179 (Plaintiff's Mot. in Opp. to Def. Mot. for Judgment on Pleadings).

In an order issued on March 3, 2005, the district court granted Liberty Mutual's motion for judgment on the pleadings, and dismissed all of Rawe's claims. J.A. at 36-37 (Order at 1-2). The district court dismissed Rawe's claims based upon Liberty Mutual's handling of her claim for benefits under the UIM policy on res judicata grounds. J.A. at 46-47 (Order at 11-12). The district court also dismissed Rawe's third-party common-law bad-faith claim because of the lack of any assignment of rights from Haggard to Rawe, J.A. at 41-42 (Order at 6-7), and found insufficient evidence of Liberty Mutual's outrageous conduct or Rawe's resultant damages to substantiate her third-party KUCSPA claim. J.A. at 47-49 (Order at 12-14). Rawe filed a timely notice of appeal.[4] J.A. at 50 (Notice of Appeal).

## II. ANALYSIS

### A. Standard of Review

We review de novo a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

---

[4]In her complaint, Rawe also alleged that Liberty Mutual's actions regarding her UIM claim constituted a breach of contract, J.A. at 27 (Compl. at ¶¶ 77-78), and common-law fraud, J.A. at 30 (Compl. at ¶¶ 97-98). On appeal, however, we consider only Rawe's bad-faith claims under common law, as well as her claims under the KCPA and the KUCSPA. While Rawe lists her fraud and contract claims in the "Statement of Issues for Review" in her appellate brief as claims erroneously dismissed by the district court, Appellant Br. at 2, and asserts the same statement at several points in her brief, she does not advance any arguments in her appellate brief about the merits of her fraud and contract claims and why they survive Liberty Mutual's motion for judgment on the pleadings. Rawe has therefore forfeited her common-law fraud and contract claims. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999) (stating that an issue that is only mentioned in a cursory manner in an appellate brief and not developed may be deemed forfeited); *Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997) (stating that the court will not consider a claim on appeal that is merely mentioned as an issue, but on which the party makes no argument).

479 F.2d 478, 480 (6th Cir. 1973).  A Rule 12(c) "motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).  "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Ziegler*, 249 F.3d at 512.

As we are sitting in diversity, we apply the substantive law of Kentucky, the forum state. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).  Where we confront an issue that "has not yet been resolved by the [Kentucky] courts, we must attempt to predict what the [Kentucky] Supreme Court would do if confronted with the same question." *Id.*  We review de novo the district court's applications and determinations of Kentucky law. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

## B.  Bad Faith Under Kentucky Law

Rawe argues that Liberty Mutual violated its good faith obligations under Kentucky law in its handling of her bodily injury and UIM claims.  Rawe also argues that Liberty Mutual's actions "during the litigation [of these disputed claims] and post-litigation contributed to its violations" of Kentucky law.  Appellant Br. at 6.  Because Rawe and her parents were insured by Liberty Mutual under their UIM policy, Rawe's claims stemming from Liberty Mutual's handling of the UIM claim are first-party bad-faith claims.  Given that Haggard was the insured under the bodily injury claim, Rawe's claims pursuant to that policy are considered third-party bad-faith claims. *See Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 441 (Ky. 1997).

As the Supreme Court of Kentucky explained in *Guaranty National Insurance Company v. George*, 953 S.W.2d 946, 950 (Ky. 1997) (Cooper, J., concurring), Kentucky law recognizes four categories of bad-faith claims against insurance companies: (1) common-law third-party bad faith, which "occurs when a liability insurer's failure to settle a tort claim against its insured results in a judgment in excess of the insured's policy limits." *Id.* (citing *Eskridge v. Educator & Executive Insurers, Inc.*, 677 S.W.2d 887 (Ky. 1984); (2) common-law first-party bad faith, which "arises when an insurer refuses to pay the claim of its own insured under a first-party coverage provision of its policy." *Id.* (citing *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176 (Ky. 1989); (3) first-party bad faith in violation of the KCPA, which allows an insured to recover against her or his insurer for an "unlawful act" as defined by the KCPA, *see Davidson v. Amer. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000) (citing *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819 (Ky. 1988)); and (4) first- and third-party bad faith in violation of the KUCSPA. *See Guaranty*, 953 S.W.2d at 950 (citing *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 117 (Ky. 1988)).  Rawe alleges bad-faith claims under all four categories.  J.A. at 16-30 (Compl. at Counts I-III).

A single test under Kentucky law exists for the merits of bad-faith claims, whether brought by a first- or third-party claimant or brought under common law or statute.  This test, established by the Supreme Court of Kentucky in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), is the "leading case on 'bad faith' in Kentucky," and "the culmination of the development of 'bad faith' liability in [Kentucky] jurisprudence." *Davidson*, 25 S.W.3d at 99.  Kentucky law dictates that:

> an insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Cobb King v. Liberty Mut. Ins. Co.*, 54 F. App'x 833, 836-37 (6th Cir. 2001) (unpublished opinion) (quoting *Wittmer*, 864 S.W.2d at 890). The district court in this case properly identified the *Wittmer* test as the critical Kentucky bad-faith standard, J.A. at 41 (Order at 6), but did not reach the merits on any of plaintiff's claims because it found that all of Rawe's claims failed as a matter of law for a variety of reasons. We now review the various categories of Rawe's bad-faith claims in order to determine whether the district court properly granted judgment on the pleadings to Liberty Mutual.

### 1. Rawe's First-Party Bad-Faith Claims Under Kentucky Common Law and the KCPA

Rawe alleges that Liberty Mutual breached its first-party duty to act in good faith under Kentucky common law and the KCPA by failing to satisfy its obligations to pay her claim under the UIM policy. J.A. at 27-30 (Compl. at ¶¶ 77-83, 85-95). Liberty Mutual argued before the district court that all of these claims are barred as a matter of law. J.A. at 102 (Mem. in Support of Mot. for Judgment on Pleadings at 2). The district court agreed with Liberty Mutual, holding "that any claims based upon [d]efendant's conduct in handling [p]laintiff's claim for UIM benefits are barred under the doctrine of res judicata." J.A. at 46-47 (Order at 11-12). Upon review, we conclude that the district court's reasoning in relation to plaintiff's first-party bad-faith claims based upon Liberty Mutual's conduct allegedly occurring before Rawe filed her complaint in the first suit is sound, but that the district court erred in dismissing without analysis Rawe's claims based upon Liberty Mutual's alleged conduct that occurred after Rawe filed the complaint in the first suit.

### a. Rawe's First-Party Bad-Faith Claims Based Upon Pre-Complaint Conduct are Barred by Claim Preclusion

As this case involves successive diversity actions, federal res judicata principles apply. *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis added). We use a four-part test for determining whether a subsequent action is barred by the doctrine of res judicata, or to be more precise in this circumstance, claim preclusion.[5] "[R]es judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).

Relying upon one of our unpublished decisions, *Hamilton v. State Farm Fire & Cas. Co.*, No. 96-4141, 1997 WL 664772 (6th Cir. Oct. 23, 1997) (unpublished opinion), the district court concluded that Rawe's previous suit to enforce her rights under the UIM policy, which ended with the district court's final order recognizing the $45,000 settlement agreement, precluded this subsequent bad-faith action. J.A. at 43-45 (Order at 8-10). The facts of this case closely resemble those in *Hamilton*, where a plaintiff sued his homeowner insurer because the insurer failed to pay on the policy after the plaintiff's home was destroyed by fire. *Id.* at *1. After the defendant in

---

[5]The Supreme Court in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n.1 (1984), explained the difference between issue preclusion and claim preclusion, both of which are frequently referred to simply as "res judicata." *Migra* explained:

> Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Id.* (citation omitted).

*Hamilton* removed the case to federal court, the plaintiff prevailed in his action to enforce the insurance agreement, and the insurer satisfied the judgment. The plaintiff then filed a subsequent action in state court for bad faith and infliction of serious emotional distress for failing to honor the homeowner policy. This case was also removed, and the district court concluded that the claims were barred by res judicata because the court found "identity between the causes of action plaintiff asserted in his second suit and that which he asserted in the first suit." *Id.* We affirmed, stating that claim preclusion barred the subsequent action because "the causes of action all arose from the insurance policy issued to plaintiff by defendant, the fire which destroyed plaintiff's home and defendant's nonpayment of the proceeds under the policy." *Id.* at *2.

We agree with the district court that our reasoning in *Hamilton* is instructive here. As in *Hamilton*, the causes of action here all arose from the UIM policy issued to Rawe by Liberty Mutual, the car accident that injured Rawe, and Liberty Mutual's nonpayment of the proceeds under the policy. Similar to *Hamilton*, all of the asserted causes of action stemming from Liberty Mutual's alleged actions occurring *before* the first suit was filed in October 2003 "arose from the same transaction, or series of transactions," and therefore "they should have been litigated in the earlier action." *Id.* "The fact that [Rawe] now asserts alternative theories of recovery and seeks a different remedy does not allow [her] to avoid claim preclusion, when those other theories could have been asserted and remedies could have been sought in the earlier action." *Id.* Rawe's allegations of bad faith based upon Liberty Mutual's alleged actions predating the filing of Rawe's first suit do not arise "from entirely separate and discrete events and wrongful acts by" Liberty Mutual than those asserted in her first UIM suit. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994). We therefore affirm the district court's dismissal of plaintiff's first-party bad-faith claims under Kentucky common law and the KCPA, because those claims based upon defendant's conduct that allegedly occured before Rawe filed her complaint in October 2003 are barred by the doctrine of claim preclusion.

### b. Rawe's First-Party Bad-Faith Claims Based Upon Post-Complaint Conduct Are Not Barred by Claim Preclusion

The district court did not analyze plaintiff's first-party bad-faith claims based upon Liberty Mutual's alleged conduct that occurred after Rawe filed her complaint in the first lawsuit in October 2003, but nevertheless dismissed all of her first-party bad-faith claims about the handling of the UIM policy on res judicata grounds. Upon review, we conclude that these claims are not barred by claim preclusion, and so we reverse the district court's dismissal of these claims.

In Count II, Rawe's common-law first-party bad-faith claim, and Count III, her first-party bad-faith claim under the KCPA, Rawe alleges that Liberty Mutual's actions after the October 2003 filing of her complaint in the first lawsuit constituted bad faith. Rawe cites primarily Liberty Mutual's failure to comply with the judgment for $45,000 that resulted from the first lawsuit until Rawe agreed to sign a release of claims extraneous to her UIM policy claim as constituting bad faith. J.A. at 28-30 (Compl. at ¶¶ 82-83, 90-91, 98); Appellant Br. at 38. Rawe argues that because she had received the judgment, "no release was required and upon Liberty Mutual's refusal to pay, a cause of action arose." Appellant Br. at 38. She further argues that "[u]ntil the claim is finally paid in full, the processing of the claim is not final and the transaction is still covered" by Kentucky law on bad faith under the KCPA and Kentucky common law. *Id.*

We agree that Rawe's first-party bad-faith claims that are based upon Liberty Mutual's actions after she filed the first lawsuit to enforce the UIM contract cannot be barred by res judicata, because those alleged actions had not yet occurred at the time she filed the first UIM suit. The district court's dismissal of these claims on res judicata grounds was erroneous. "Simply put, [Rawe] could not have asserted a claim that [she] did not have at the time." *Kane*, 71 F.3d at 560. Rawe argues persuasively that these claims were not yet ripe when she filed suit to enforce her rights

under the UIM contract, Appellant Br. at 39-41, and she is correct that res judicata does not apply to claims that were not ripe at the time of the first suit. *Katt v. Dykhouse*, 983 F.2d 690, 694 (6th Cir. 1992). Rawe's previous suit under the UIM policy does not prospectively immunize the defendant from liability for future actionable conduct for bad faith.

We also reject the argument that res judicata bars Rawe's claims based upon Liberty Mutual's alleged conduct after Rawe filed the initial complaint on the theory that Rawe *could* have amended her complaint to include this ongoing alleged wrongdoings. Instead, we follow the majority rule articulated by the Wright and Miller treatise "that an action need include only the portions of the claim due at the time of commencing that action," because "the opportunity to file a supplemental complaint is not an obligation." 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4409 (2d ed. 2002). *See also Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000) ("[W]e agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed."); *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation."); *Spiegel v. Continental Ill.Nat'l Bank*, 790 F.2d 638, 646 (7th Cir. 1986) (holding that res judicata does not bar new action based on alleged acts occurring after the filing of the first law suit).

As we have concluded that Rawe's claims based upon Liberty Mutual's alleged conduct occurring after the filing of Rawe's October 2003 complaint in first lawsuit are not barred by claim preclusion, we now consider Liberty Mutual's argument that it is entitled to judgment on the pleadings on these claims. Whether Liberty Mutual's actions demanding that Rawe sign a release before it would comply with the judgment are sufficient to support Rawe's first-party bad-faith under Kentucky common law and the KCPA is a close question, and we can find no simple answers in Kentucky case law. Because we conclude that Liberty Mutual is not entitled to judgment as a matter of law and that issues of material fact remain, we reverse the district court's grant of judgment on the pleadings to Liberty Mutual with respect to the alleged post-complaint conduct.

First, Rawe's first-party bad-faith claims do not fail as a matter of law. While Liberty Mutual encourages us to conclude that failure to comply with a judgment cannot constitute bad faith, either under common law or the KCPA, it is unable to provide any legal authority to suggest that it is entitled to judgment as a matter of law on this principle. The Supreme Court of Kentucky has stated the acts complained of in a KCPA claim, like a common-law tort claim for bad faith, must be "substantial wrongs," and that mere "irritations injuring pride" are insufficient. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991). While it is unclear whether a jury would view these actions as "substantial wrongs," a reasonable jury could so view Liberty Mutual's actions. The insurance company's demand that the release be executed was certainly more than an irritation of Rawe's pride, as it stood in the way of her "clearly protected interest[s] and rights" under the court's judgment and required her, through her attorney, to take further action to collect under the judgment. *Id.*

Furthermore, the Supreme Court of Kentucky appears to view the question of whether an insurer's actions rise to the level of unlawful conduct under the KCPA to be a question of fact, therefore rendering the inquiry inappropriate for resolution on a Rule 12(c) motion. *See Paskvan*, 946 F.2d at 1235. In *Stevens v. Motorists Mutual Insurance Co.*, which established that a first-party bad-faith claim against an insurer is actionable under the KCPA, the Supreme Court of Kentucky reversed a directed verdict on a KCPA claim for the insurer, stating that "when the evidence creates an issue of fact, that any particular action is unfair, false, misleading or deceptive it is to be decided by a jury." *Stevens*, 759 S.W.2d at 820. Similarly, here it seems that the Supreme Court of Kentucky would view the question of whether Liberty Mutual's actions – its failure to comply with the

judgment, its demand that Rawe sign a complete release of all potential claims, and its compliance with the judgment only after Rawe sought a writ to enforce the judgment – constituted unfair conduct under the KCPA to be a question of fact. As this material issue of fact remains, we reverse the grant of judgment on the pleadings to Liberty Mutual on plaintiff's first-party bad-faith claims based upon Liberty Mutual's alleged actions occurring after the filing of the first lawsuit in October 2003, and remand these claims to the district court for further consideration.

### 2.   Rawe's Third-Party Common-Law Bad-Faith Claim

The district court correctly dismissed Rawe's third-party common-law bad-faith claim as a matter of law, because the pleadings do not allege that Haggard, who was the insured under the bodily injury policy, ever assigned his rights under the policy to Rawe. J.A. at 41 (Order at 6). It is settled law in Kentucky that insurers do not have any common-law duty of good faith to third-party claimants. *Manchester Ins. & Indem. Co. v. Grundy*, 531 S.W.2d 493, 498 (Ky. 1975) ("There is no privity of contract between the insurer and the claimant, so the insurer is never guilty of 'bad faith' to the claimant. The claimant can look only to the insured for satisfaction of the judgment unless the insured makes an assignment to the claimant."), *cert. denied*, 429 U.S. 821 (1976); *see also Glass*, 996 S.W.2d at 451 (citing *Manchester* as establishing that a cause of action for common-law bad faith belongs only to the liability insured). In *Glass*, the Supreme Court of Kentucky explained that a third-party common-law bad-faith claim arises only when the insured has assigned her contractual rights to the third-party plaintiff.

> [U]nder the principle of privity of contract, the [common-law bad-faith] cause of action belonged only to the liability insured; but . . . the insured could assign it to the liability plaintiff in consideration for a release of the insured from any liability in excess of the policy limits. As assignee of the insured, the successful plaintiff could then bring the "bad faith" action in a derivative capacity against the insurer to recover the excess amount of the verdict. Punitive damages were not recoverable, because the action was considered to be one for breach of contract. This type of action is referred to as a "third-party bad faith" action.

*Id*. In Count II of her complaint, Rawe does not allege that Haggard assigned rights to her, but merely states that she was "a third party beneficiary" to Haggard's bodily injury insurance contract with Liberty Mutual, and that Liberty Mutual owed her a duty in that capacity. J.A. at 27 (Compl. at ¶ 80). This is insufficient under Kentucky law. We therefore affirm the district court's dismissal of Rawe's third-party bad-faith claim because Rawe has not alleged privity of contract between herself and Haggard.

### 3.   Rawe's Claims under the Kentucky Unfair Claims Settlement Practices Act

We next consider Rawe's allegations that Liberty Mutual's actions in response to her attempts to recover under Haggard's bodily injury policy as well as her parents' UIM policy violated the KUCSPA. Rawe argues that the district court erred in granting judgment as a matter of law to Liberty Mutual on Count I of her complaint, which contains her claims under the KUCSPA. Upon review, we reverse the grant of judgment on the pleadings to Liberty Mutual on Rawe's third-party KUCSPA claims, and affirm the grant of judgment on the pleadings on Rawe's first-party KUCSPA claims.

The KUCSPA creates both first- and third-party obligations to settle insurance claims in good faith. The KUCSPA "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured or to another person bringing a claim under an insurance policy." *Knotts v. Zurich Ins. Co.*, --- S.W.3d --- , No. 2004-SC-0400-DG, 2006 WL 1358718, at *2 (Ky. May 18, 2006) (citing KY. REV. STAT. ANN. § 304.12-230). The KUCSPA "is intended to protect the public from unfair trade practices and fraud. It should be liberally construed so as to

effectuate its purpose." *Reeder*, 763 S.W.2d at 118. The KUCSPA "proscribes a list of [fifteen] particular acts and practices" that it deems unfair claims settlement practices. *Knotts*, 2006 WL 1358718, at *2. Rawe alleges in her complaint that Liberty Mutual violated five subsections of the Act by:

> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . .
>
> (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and
>
> (7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

*See* KY. REV. STAT. ANN. § 304.12-230(2)-(4), (6)-(7); J.A. at 25-26 (Compl. at ¶¶ 62-74) (citing these particular provisions of the KUCSPA). In order to prove either a first- or third-party bad-faith claim under the KUCSPA, Rawe must establish three elements demonstrating that Liberty Mutual refused in bad faith to pay her claim:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. . . . [A]n insurer is . . . entitled to challenge a claim and litigate it if the claim is debatable on the law or facts.

*Glass*, 996 S.W.2d at 452 (internal quotation marks omitted). Because Rawe is seeking punitive damages for Liberty Mutual's alleged violation of the KUCSPA in addition to compensatory damages, J.A. at 30-31 (Compl. at ¶¶ 96-100), she must plead "sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured claimant to warrant submitting the right to award punitive damages to the jury." *Cobb King*, 54 F. App'x at 837 (quoting *Wittmer*, 864 S.W.2d at 890). Regardless of which type of damages is sought, a plaintiff cannot bring a private cause of action "for a mere 'technical violation' of the [K]UCSPA," but rather "a condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." *Glass*, 996 S.W.2d at 452 (quoting *Wittmer*, 864 S.W.2d at 890).

### a. Rawe's Third-Party KUCSPA Claims

Rawe's third-party KUCSPA claims allege that Liberty Mutual's unwillingness promptly to pay her claim of $100,000, the policy limit under Haggard's bodily injury policy, violated the KUCSPA. J.A. at 17-21 (Compl. at ¶¶ 11-37). The Supreme Court of Kentucky first held in *Reeder* that the KUCSPA created a private right of action for a third-party plaintiff harmed as a result of violations of the Act. *Reeder*, 763 S.W.2d at 118. In considering Rawe's third-party KUCSPA claim, the district court correctly recognized the validity of a third-party bad-faith claim as established in *Reeder*, but concluded that Rawe could not maintain a cause of action because, even assuming Rawe's factual allegations to be true, the pleadings do not support the conclusion that Liberty Mutual acted with the necessary level of culpability. J.A. at 47-48 (Order at 12-13).

Upon review, we cannot conclude that Liberty Mutual was entitled to judgment as a matter of law on Rawe's third-party KUCSPA claims. When considering Liberty Mutual's motion for judgment on the pleadings, we must "construe the complaint in the light most favorable to the plaintiff," and "accept all of the complaint's factual allegations as true." *Ziegler*, 249 F.3d at 512. Under this standard, Liberty Mutual has failed to show that Rawe "undoubtedly can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Id.* On the contrary, Rawe's complaint alleges violations of several subsections of the KUCSPA, as well as factual allegations about lengthy delays in paying the bodily-injury-policy limits and additional demands for further documentation of Rawe's injuries that had previously been provided, such that a reasonable jury could conclude that Liberty Mutual's settlement behavior during the negotiation of the bodily-injury-policy claim constituted unfair claims settlement practices. Rawe has also alleged that she was harmed as a result of Liberty Mutual's alleged violations of the KUCSPA. J.A. at 30-31 (Compl. at ¶¶ 99-100).

We further conclude that a reasonable jury could find that the facts as alleged by Rawe, which include having to wait nearly two years to receive an offer of the bodily-injury-policy limit despite having provided Liberty Mutual with documentation of her permanent brain injuries and medical expenses, constituted reckless indifference to her rights to recover as a claimant who both parties agreed was harmed by Haggard, whom Liberty Mutual insured. *See Glass,* 996 S.W.2d at 452. We therefore cannot conclude that Liberty Mutual is entitled to judgment on the pleadings on Rawe's third-party KUCSPA claims. As we read *Wittmer*, *Glass*, and the Supreme Court of Kentucky's most recent decision in *Knotts,* Rawe's pleadings are sufficient to defeat Liberty Mutual's motion for judgment on the pleadings. We reverse the district court's dismissal of Rawe's third-party KUCSPA claims and remand these claims to the district court for further consideration.

### b.  Rawe's First-Party KUCSPA Claims

Rawe's first-party bad-faith claims stem from her allegations that Liberty Mutual's refusal to pay promptly her the policy limits under the UIM policy violated the KUCSPA. For the reasoning expressed in section (II)(B)(1)(a) of this opinion, we affirm the district court's grant of judgment to Liberty Mutual on Rawe's first-party KUCSPA claims based upon Liberty Mutual's alleged conduct pertaining to the UIM policy that predate the filing of her complaint in her first lawsuit to recover under the UIM policy in October 2003. As explained above, our analysis in *Kane* counsels us to conclude that these claims are barred by claim preclusion. Rawe could have brought her KUCSPA claims based upon Liberty Mutual's alleged settlement behavior occurring before she filed her initial complaint when she filed suit to enforce the terms of the UIM policy. The final judgment on the merits in that case "precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Federated Dep't Stores,* 452 U.S. at 398.

Rawe alleges additional first-party KUCSPA claims against Liberty Mutual, however, based upon its alleged conduct that occurred after she filed her first lawsuit in October 2003. J.A. at 23-26 (Compl. at ¶¶ 53-75). For the reasons we explained in (II)(B)(1)(b), these claims are not barred by claim preclusion. The Supreme Court of Kentucky's recent decision in *Knotts* also breathes new life into Rawe's claims based upon Liberty Mutual's alleged settlement misconduct occurring after she instigated litigation. *Knotts* held that the KUCSPA "continues to apply to an insurer so long as a[n] [insurance] claim is in play. As such, we hold that [the KUCSPA] applies both before and during litigation." *Knotts*, 2006 WL 1358718, at *4. The Supreme Court of Kentucky explained that if the KUCSPA:

> were not applicable once litigation commenced, insurance companies would have the perverse incentive to spur injured parties toward litigation, whereupon the insurance company would be shielded from any claim of bad faith. Such a reading would undermine the statute's fundamental purpose by allowing insurance companies to engage in whatever

sort of practice – fair or unfair – they see fit to employ.  The remedial nature of the statute requires that we attempt to effectuate its purpose, which, in a situation like this one, requires applying the statute to conduct occurring after the commencement of litigation of a tort action.

*Id*.  We note that our previous resolution of this issue in *Torres v. American Employers Insurance Co.*, 151 F. App'x 402, 409 (6th Cir. 2005) (unpublished opinion), which relied upon the now-reversed decision of Kentucky Court of Appeals in *Knotts v. Zurich Insurance Co.*, No.2002-CA-001846-MR, 2004 Ky.App. LEXIS 22, at *14 (Ky. Ct. App. 2004), to conclude that the KUCSPA does not apply to alleged settlement misconduct after litigation has commenced, is no longer good law after the Kentucky Supreme Court's decision in *Knotts*.

Despite the Supreme Court of Kentucky's holding in *Knotts*, Liberty Mutual urges us to affirm the district court's grant of judgment on the pleadings because Liberty Mutual argues that its actions occurring after litigation commenced that Rawe alleges violated the KUCSPA are inadmissible to prove bad faith because that complained-of conduct is litigation conduct.  Liberty Mutual is correct that the Supreme Court of Kentucky's recent decision in *Knotts* also adopted "an absolute prohibition on the introduction" of evidence of litigation conduct as proof of an insurer's bad faith, as the Supreme Court of Kentucky reasoned that the Rules of Civil Procedure provide adequate remedies "for any wrongdoing that may occur within the context of the litigation itself." *Knotts*, 2006 WL 1358718, at *9.  *Knotts*, however, was careful to distinguish the evidence of an insurer's settlement behavior during litigation, which it held was permitted as evidence of bad faith, from an insurer's other litigation conduct.  The court explained that the distinguishing feature is that the Rules of Civil Procedure provide remedies for the latter.[6]  In reasoning that the KUCSPA was unnecessary to remedy litigation conduct, the Supreme Court of Kentucky stated in *Knotts* that "[w]e are confident that the remedies provided by the Rules of Civil Procedure for any wrongdoing that may occur within the context of the litigation itself render unnecessary the introduction of evidence of litigation conduct." *Id*.

We must now determine whether Liberty Mutual's alleged conduct after Rawe initiated litigation that Rawe complains violated the KUCSPA constitutes improper settlement behavior, in which case it may be considered evidence to support her KUCSPA claim, or whether it is improper litigation conduct inadmissible to prove bad faith under the KUCSPA.  We may grant Liberty Mutual's Rule 12(c) motion only if, taking all of Rawe's well-pleaded allegations as true, Liberty Mutual "is nevertheless clearly entitled to judgment" on these claims. *Southern Ohio Bank*, 479 F.2d at 480.  For the following reasons, we conclude that Liberty Mutual is entitled to judgment on the pleadings on Rawe's first-party KUCSPA claims based upon Liberty Mutual's failure to comply with the March 2004 judgment until Rawe signed an additional release of all future claims.

While at first glance this complained-of conduct may appear to be settlement behavior akin to offering an unreasonably low settlement amount, *Knotts*'s requirement that we use the Rules of Civil Procedure as the litmus test for inadmissible litigation conduct counsels us to conclude that Liberty Mutual's failure to pay the March 2004 judgment amount in the first lawsuit unless Rawe waived additional claims is litigation conduct, which *Knotts* deems inadmissible to prove bad faith. When confronted by Liberty Mutual's inequitable and illegal refusal to pay Rawe the $45,000 as due under the March 2004 judgment, Rawe turned, as she should have, to Federal Rule of Civil Procedure 69 to force Liberty Mutual to execute the judgment. J.A. at 226-27 (Mot. for Issuance of Writ of Exec.).  The Federal Rules of Civil Procedure provided Rawe with a remedy, as Liberty Mutual then complied with the judgment.  These circumstances are therefore a quintessential

---

[6]*Knotts* also explained that when deciding which evidence of an insurer's settlement behavior is admissible to prove bad faith, "courts must be careful to weigh the probativeness of the proposed evidence against its potential for prejudice." *Id*. at *10.

example of the sort of bad litigation conduct that the Rules of Civil Procedure adequately remedy, and that *Knotts* therefore deems inadmissible to prove bad faith. *Knotts*, 2006 WL 1358718, at *9.

As it appears from the complaint that Rawe has not alleged any additional settlement behavior to support her first-party bad-faith claim under the KUCSPA, we affirm the district court's grant of judgment to Liberty Mutual on Rawe's first-party bad-faith claims under the KUCSPA. Rawe's claims based upon Liberty Mutual's alleged settlement conducted that occurred prior the filing of Rawe's complaint in the first lawsuit are barred by claim preclusion. Liberty Mutual's failure to comply with the March 2004 judgment was remedied by Rawe's reliance on the Federal Rules of Civil Procedure, and therefore under *Knotts*, Rawe's KUCSPA claims based upon this behavior are insufficient as a matter of law to prove her bad-faith claim under the KUCSPA. We affirm the dismissal of Rawe's first-party bad-faith claims under the KUCSPA.

### 4. Rawe's Third-Party Bad-Faith Claim under the Kentucky Consumer Protection Act

The district court was also correct in dismissing as a matter of law Rawe's third-party claim under the KCPA, because it is settled law in Kentucky that the KCPA does not apply to such claims. According to the Supreme Court of Kentucky, "[t]he Consumer Protection Act has no application to third-party claims." *Glass*, 996 S.W.2d at 447. We affirm the district court's dismissal of Rawe's third-party claim under the KCPA.

## III. CONCLUSION

For the reasons discussed above, we **REVERSE** the grant of judgment on the pleadings to Liberty Mutual on Rawe's first-party bad-faith claims under Kentucky common law and the KCPA based upon Liberty Mutual's alleged conduct occurring after the filing of the complaint in the first lawsuit in October 2003. We also **REVERSE** the grant of judgment on the pleadings to Liberty Mutual on Rawe's third-party bad-faith claims under the KUCSPA. We remand these claims to the district court for further consideration consistent with this opinion. We **AFFIRM** the district court's grant of judgment on the pleadings to Liberty Mutual on Rawe's remaining claims, as they are either precluded by the final judgment in her first lawsuit or insufficient as a matter of law.